Paula DOAN, plaintiff,

v.

NSK CORPORATION, Defendant.

No. CIV. 02–40097.

United States District Court,
E.D. Michigan,
Southern Division.

June 9, 2003.

James R. Cmejrek, Ann Arbor, MI, for Paula Doan, plaintiff.

Susan H. Zitterman, Cheryl A. Cardelli, Kitch, Drutchas, Detroit, MI, for NSK Corporation, defendant.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

GADOLA, District Judge.

In this civil action, Plaintiff alleges employment discrimination on the basis of sex. Before the Court is Defendant's motion for summary judgment. Plaintiff filed a timely response, and Defendant filed a timely reply brief. The Court held a hearing on the issues relevant to this opinion and order on May 23, 2003. For the reasons set forth below, the Court will grant the motion.

## I.  BACKGROUND

### A.  Plaintiff's Apprenticeship

Defendant hired Plaintiff as a janitor in 1994. In April or May 1996, Plaintiff was given an opportunity to enter a machine repair apprenticeship program. On May 17, 1996, Plaintiff signed an agreement to begin the program. At the time, Plaintiff was the only apprentice in the program.

The program is jointly governed by Defendant and Plaintiff's union in cooperation with the United States Department of Labor and Washtenaw Community College ("WCC"). The program is operated by the Joint Apprenticeship Training Committee consisting of two members from Defendant and two members from Plaintiff's union. At times relevant to this action, one member of the Committee was a woman, Julie Lynch, Defendant's human resources manager. The program has two components: (1) 8,000 hours of on-the-job training, and (2) course work at WCC. The course-work requirements are established by the Committee.

Plaintiff claims that in the spring of 1997, when she attempted to register at WCC for one of the courses she believed to be in the program, titled Fluid Power Instrumentation "FLP 225", she learned that the course had an electrical course prerequisite, which she did not have.

Plaintiff alleges that when she informed the Committee that WCC's registration book indicated that FLP 225 had an electrical course prerequisite, the Committee advised her that two other courses had been substituted by the Committee into the program in lieu of FLP 225. These substitutes were Electrical Fundamentals "ELE 111" and Introduction to Materials "MTT 103". The Committee's substitution added one course to the specific require-

ments of the program.[1] According to Defendant, this substitution by the Committee occurred on April 16, 1996, before Plaintiff entered the program. Plaintiff disputes this date.

Plaintiff avers that she immediately began to complain about the substitution. Further, Plaintiff purportedly complained to Ms. Lynch that the substitution constituted sex discrimination. Plaintiff conceded in her deposition, however, that two men started the program after her and that they were required to follow the same course plan, including the electrical course requirement.

Despite her informal complaints, Plaintiff enrolled and completed the MTT 103 course in the fall of 1997. Thereafter, Plaintiff enrolled in the ELE 111 course in the fall of 1999, but Plaintiff later withdrew from the course because she was dissatisfied with the course's content and/or because of personal pressures.

After Plaintiff dropped the ELE 111 course, the Committee proposed alternative courses, including courses at a school other than WCC. Reportedly, Ms. Lynch went through course catalogues from other schools for Plaintiff trying to find alternative courses. Nonetheless, Plaintiff declined this opportunity to attend another school.

Instead, Plaintiff suggested Fluid Power Motion Control as an alternative to the electrical course. However, Ms. Lynch researched the substance of this alternative course and determined that it was an advanced course in hydraulics. The Committee denied Plaintiff's proposal on the grounds that it was not a suitable substitute for a basic electrical course. Plaintiff conceded in her deposition that her proposed alternative was not related to anything electrical.

In August 2001, the Committee denied Plaintiff's request for reconsideration of their prior decision to include the electrical course requirement in the program and of their prior decision not to allow her to substitute a fluid power course for the electrical course. In October 2001, Plaintiff filed a union grievance against Defendant based on the electrical course requirement. The union dropped the grievance in early 2002.

Plaintiff completed the required 8,000 hours of on-the-job training in February 2002. At the time, Plaintiff received a pay raise commensurate with having completed the program at that time even though she had yet to complete all of the required course work.

Although the program is usually a four-year program, which Plaintiff should have completed by the spring of 2000, Plaintiff finished all the required course work, including the electrical course, in April 2002. This delay is attributable to a number of health problems, which caused Plaintiff to take leaves from work. Plaintiff was off work from April 2000 to October 2000 due to her manic depressive order and from

---

1. Although the Committee's substitution did add one course to the specific requirements of the program, there was, in reality, no net change in the number of required courses. Before the substitution, the program required FLP 225, but WCC required students to complete an electrical course before enrolling in FLP 225 (i.e., FLP 225 had an electrical course prerequisite). Thus, before the substitution, the program's FLP 225 requirement actually constituted a two course requirement. Furthermore, after the substitution, the Committee replaced FLP 225 with two courses: ELE 111 and MTT 103. These two new course had no prerequisites. Consequently, an individual in the program had to take two course both before and after the substitution; that is, there was no net change as the result of the course substitution in question.

October 2000 to October 2001 due to a knee injury and lupus.

Upon completing her course work, Plaintiff became a member of the skilled trades in April 2002. In her deposition, Plaintiff conceded that her benefits and her pay were not adversely affected by her delay in completing her course work.

### B. Plaintiff's EEOC Charge

On or about October 15, 2001, Plaintiff filed a sex discrimination charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"). At the same time, Plaintiff also lodged a complaint with the State of Michigan's Department of Civil Rights. The state agency later dismissed the complaint because the EEOC had assumed jurisdiction over the jointly filed complaint.

Plaintiff included only one factual basis in the EEOC charge, and it concerned the course substitution issue detailed *supra.* Specifically, Plaintiff's EEOC charge alleged the following:

In [the] spring of 1997, one of the courses was dropped and two more courses were added. I have completed one of the courses but not the Electrical Fundamentals course. In other apprenticeship classification [situations,] which consist of all males, when their classes were dropped, they were allowed to pick alternative courses. I was not. Also, the [governing collective bargaining agreement] state[s] that "new schedules added upon mutual agreement of the company and the union, and with written consent of the apprentice."

I am the only female, who has completed the program[.] I believe that I'm being subject to unfair terms and conditions[, and I'm being forced] to take additional unrelated courses because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Def. Mot. Ex. F (EEOC Charge Number 230A20082).

The EEOC dismissed Plaintiff's charge on January 11, 2002. The EEOC informed Plaintiff of the following:

The information you provided us shows that the course changes were made in the spring of 1997. This raises a possible timeliness issue with regards to our jurisdictional authority. It also raises the question as to why you did not file a charge with our agency until October 15, 2001 . . . .

Your employer states that there have been changes in other apprenticeship programs which male participants are required to comply with. In addition, they state that you were offered the option of taking an electrical course at another institution, or proposing alternative electrical courses.

*Id.*

### C. This Civil Action

Plaintiff filed the complaint in this Court on April 12, 2002. The complaint contained one specific allegation and one general allegation against Defendant:

In the spring of 1997, one of the required courses was dropped and two more courses were added. Plaintiff has completed one of the courses, but not the electrical fundamentals course. Plaintiff was not allowed to pick alternative courses, as other apprenticeship classifications which consisted of all males were allowed to do . . . .

Throughout the course of her employment with Defendant, Plaintiff was treated differently from similarly situated white male employees with respect to the terms, conditions and benefits of her employment. At various times throughout her tenure with Defendant, Plaintiff

voiced her disparate treatment concerns to members of her management.

Compl. at ¶ 12 and ¶ 14. Plaintiff is utilizing this second general allegation to broaden her attack on Defendant to include claims of harassment in 1997 and 1998 from two supervisors, Dennis Norton and Mike Field, and two toolmakers, Kathy Straub and Ralph Myer.

According to her deposition and response brief, Plaintiff's other claims include the following:

1. Mr. Norton allegedly said "I don't get even, I get revenge" when Plaintiff completed a job before Mr. Norton told her to do the particular job in question.

2. Mr. Norton criticized her for taking breaks that lasted too long.

3. Mr. Norton ignored her.

4. Ms. Straub and Mr. Myer trained her improperly.

5. Ms. Straub and Mr. Myer refused to socialize with her.

6. Ms. Straub and Mr. Myer yelled at her.

7. Mr. Norton caused Ms. Straub and Mr. Myer to harass her.

8. Mr. Fields would not allow her to work overtime.

9. Mr. Fields and Mr. Norton forced her to work "off shifts" or nights.

10. Mr. Fields and Mr. Norton spoke to her in a degrading fashion.

According to Defendant, Plaintiff never filed a grievance about these or any other discrimination claims. Additionally, Plaintiff's EEOC charge does not mention any claims beyond her 1997 course-work claim.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Tpk. Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See 60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *See id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *See Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the Supreme Court of the United States has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967)); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere exis-

tence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

In this civil action, Plaintiff must clear two hurdles before the Court can adjudicate the substance of her Title VII claims. The first issue is whether the Court has subject matter jurisdiction over any claims beyond the 1997 course-work claim explicitly stated in Plaintiff's EEOC charge. The second issue is whether Plaintiff filed a timely EEOC charge.

### A. Subject Matter Jurisdiction

### 1. Legal Standard

■ "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant *explicitly* files the claim in an EEOC charge or *the claim can be reasonably expected to grow out of the EEOC charge.*" *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir.2001) (emphasis added); *see also Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir.2002) (following *Strouss* ).[2] Pursuant to this rule, the United States Court of Appeals for the Sixth Circuit has recognized that "where facts related with respect to the charged claim would prompt the EEOC to

**2.** Note that in Plaintiff's brief, Plaintiff argues that the requirement of filing a charge with the EEOC is not a jurisdictional requirement and that this requirement is subject to waiver, estoppel, and equitable tolling. *See* Pl. Br. at 12. To support this argument Plaintiff cites to *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Plaintiff further argues that equity requires Plaintiff to recover for claims that did not appear in the EEOC charge because Plaintiff alleges that she told the EEOC about her other claims but the

EEOC simply failed to include them in the charge. Plaintiff's arguments are devoid of merit. Filing a charge with the EEOC is a jurisdictional requirement that is **not** subject to waiver, estoppel, and equitable tolling. *See Strouss*, 250 F.3d at 342; *see also Weigel*, 302 F.3d at 379. Plaintiff's reliance on *Morgan* is misplaced. *Morgan* addressed the issue of whether an EEOC charge is timely (which is an issue the Court will consider *infra* ). *Morgan* does not address the issue here, which is whether a federal court has jurisdiction to

investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel,* 302 F.3d at 380.

### 2. Discussion

■ Plaintiff's EEOC charge only referenced her complaint about the course substitution, which she became aware of in the spring of 1997. The EEOC charge did not explicitly include any other allegations against Defendant. Moreover, Plaintiff has not provided the Court with any reason to conclude that her other claims are claims that could be reasonably expected to grow out of the EEOC charge. Furthermore, Plaintiff's uncharged claims of discriminatory harassment are so unrelated to the 1997 course-work claim that nothing in the EEOC charge would have prompted the EEOC to investigate Plaintiff's uncharged claims, outlined *supra,* concerning Mr. Norton, Mr. Fields, Ms. Straub, and Mr. Myers. *See Weigel,* 302 F.3d at 380. Consequently, the scope of the investigation reasonably expected to grow out of the 1997 course-work claim in EEOC charge does not include the other harassment claims, and, as a result the Court lacks jurisdiction over Plaintiff's other claims. That is, the Court's subject matter jurisdiction in this civil action is limited to Plaintiff's 1997 course-work claim.

### B. TIMELINESS AND EQUITABLE TOLLING

#### 1. Period of Limitations

#### a. Legal Standard

When, as here, a Title VII plaintiff instituted proceedings with the EEOC and a state agency, the plaintiff must file the EEOC charge within 300 days of the alleged unlawful employment practice. *See Williams v. Northwest Airlines, Inc.,* 53 Fed.Appx. 350, 352 (6th Cir.2002) (citing 42 U.S.C. § 2000e–5(e)).

#### b. Discussion

Plaintiff maintains that, in the spring of 1997, she learned of the purported adverse employment decision in which the Committee replaced the fluid power course with the material and electrical courses in the apprenticeship program. Plaintiff filed her EEOC charge in October 2001. Therefore, on its face, Plaintiff's EEOC charge is untimely in that Plaintiff missed the 300–day deadline by more than three years.

Nevertheless, in an attempt to extend the EEOC filing date for the 1997 claim, Plaintiff argues that the entire course-work issue should be viewed as a continuing violation under Title VII. Here, however, Plaintiff is advancing a discrete discriminatory act claim, as opposed to a hostile environment claim. Plaintiff concedes this point in her response brief. *See* Pl. Br. at 2. Moreover, in *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court of the United States "explicitly refused to permit the continuing violation doctrine to be used to preserve claims for discrete acts of employment discrimination as to which no timely EEOC charge had been filed." *Goshorn v. Ohio Dep't of Transp.,*

hear claims that are not explicitly included in an EEOC charge. Plaintiff's mistake is confirmed by the following sentence from *Morgan:* "the *filing period* is not a jurisdictional prerequisite to filing a Title VII suit." 536 U.S. at 121, 122 S.Ct. 2061 (emphasis added).

Accordingly, while the filing period is not a jurisdictional prerequisite, the actual filing of an explicit charge itself is a jurisdictional prerequisite in a Title VII suit. *See Strouss,* 250 F.3d at 342; *see also Weigel,* 302 F.3d at 379.

49 Fed.Appx. 601, 601–02 (6th Cir.2002). In other words, *Morgan* "held that when an employee seeks redress for discrete acts of discrimination or retaliation, the continuing violation doctrine may not be invoked to allow recovery for acts that occurred outside the filing period." *Sharpe v. Cureton,* 319 F.3d 259, 267 (6th Cir.2003) (also noting that as a result of *Morgan,* "[p]revious 'continuing violation' law must be reexamined in light of the Supreme Court's recently imposed limits on the viability of the doctrine.").

■ In this case, Plaintiff filed her EEOC charge on or about October 15, 2001. Under *Morgan,* Plaintiff may not invoke the continuing violation doctrine to preserve any discrete discriminatory act occurring more than 300 days before October 15, 2001. *See Morgan,* 536 U.S. at 113, 122 S.Ct. 2061; *Sharpe,* 319 F.3d at 267. Therefore, continuing violation doctrine is inapplicable to Plaintiff's 1997 course-work claim.

■ Additionally, Plaintiff argues that her EEOC charge was timely because, in August 2001, the Committee denied Plaintiff's request for reconsideration of their prior decision to include the electrical course requirement in the program and of their prior decision not to allow her to substitute a fluid power course for the electrical course. Obviously, this August 2001 event is less than 300 days before October 15, 2001.

Contrary to Plaintiff's argument, however, the Committee's August 2001 denial of Plaintiff's request for reconsideration of their prior decision does not bring her 1997 course-work claim within the 300–day period of limitations. That is, Plaintiff's continuing to argue with the Committee about the wisdom of a prior decision does not restart the period of limitations for filing a charge with the EEOC about the underlying prior decision.. *See Morgan,*

536 U.S. at 110, 122 S.Ct. 2061 ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within ... 300 days of the date of the act or lose the ability to recover for it."); *id.* at 112–13, 122 S.Ct. 2061 ("[A] time-barred act cannot justify filing a charge concerning [an act] that was *not independently discriminatory.*" (emphasis added)); *Del. State Coll. v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (claimant could not use a termination that fell within the limitations period to pull a time-barred discriminatory act into the limitations period); *Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 234, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (discriminatory act occurred on date of discharge and not on the date that a grievance and arbitration procedure ended).

Therefore, Plaintiff has failed to counter the conclusion that she missed the 300–day EEOC deadline by more than three years. Furthermore, equitable tolling, *see infra,* is the only remaining option for Plaintiff to save her 1997 claim from being procedurally barred.

### 2. Equitable Tolling

#### a. Legal Standard

■ The 300–day limitations period is not a jurisdictional prerequisite to filing a Title VII suit. Rather, "[t]he period for filing a charge is subject to equitable doctrines such as tolling or estoppel." *Morgan,* 536 U.S. at 113, 121, 122 S.Ct. 2061 (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–98, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Nevertheless, "such doctrines ... are to be applied *sparingly.*" *Morgan,* 536 U.S. at 113–14, 122 S.Ct. 2061 (emphasis added) (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).

"Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir.2000).

■ In this case, Plaintiff has raised a plausible equitable tolling argument. To determine the appropriateness of equitable tolling, the Sixth Circuit has established a five-factor test: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir.1998).

**b. Discussion**

In her response brief, Plaintiff advances three arguments in favor of equitable tolling. *See* Pl. Br. at 10. The first two arguments can be addressed together. Plaintiff seeks to avoid the limitations period first because she was on leave from work due to health problems from April 2000 to October 2001 and second because she filed a union grievance in October 2001.

■ These two excuses do not suffice to equitably avoid or toll the period of limitations given the time sequence in this case. Plaintiff was not off work until April 2000 and did not begin her grievance until October 2001; thus, these two events did not occur until **years after** the period for the 1997 course-work claim had **already expired**. Events or actions occurring after the expiration of the limitations period cannot serve to extend that period or excuse Plaintiff's failure to comply with the limitations period. *See Spencer v. White*, 265 F.Supp.2d 813, 2003 WL 21146713, at

*2 (E.D.Mich.2003) (Gadola, J.) (habeas petitioner's collateral state court motion did not extend or affect the one-year statute of limitations in federal habeas cases because the one-year period had already expired) (citing *Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir.2002) (an action which might otherwise toll a statute of limitations did "not affect the ... statute of limitations because ... it ha[d] already run.")). Thus, Plaintiff's first two arguments in favor of equitable tolling are without merit.

Plaintiff's third argument in favor of equitable tolling cannot be dismissed so easily because it does not suffer from the same deficiency as the first two arguments. Plaintiff's third argument is that she "almost immediately" began to informally complain to the Committee and her union about the electrical course requirement. *See* Pl. Br. at 10.

■ After balancing the five equitable tolling factors, however, the Court concludes that Plaintiff is not entitled to equitable tolling. As to factor four, there is arguably an absence of prejudice in this case to Defendant. Nonetheless, prejudice to Defendant "may only be considered if other factors of the test are met." *Dunlap v. United States*, 250 F.3d 1001, 1009 (6th Cir.2001); *see also Graham–Humphreys*, 209 F.3d at 562, n. 12 ("The arguable absence of any significant prejudice to the defendant if this court were to permit the plaintiff's filing out of rule is immaterial, because no other factor supports the plaintiff's equitable tolling posture." (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) ("although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify tolling is identified, it is not an independent basis for invoking the doctrine."))). For the reasons stated *infra*, Plaintiff has

not met the other four factors. Therefore, even if there is an absence of prejudice to Defendant in this case, this absence does not entitle Plaintiff to equitable tolling.

Next, factors one (lack of notice), two (lack of constructive knowledge), and five (reasonableness is remaining ignorant of the particular legal requirement) do not weigh in favor of tolling. Plaintiff has not offered any proof to suggest that any of these three factors should weigh in her favor. Moreover, Plaintiff has not shown, in any way, that her failure to meet the "legally-mandated deadline unavoidably arose from circumstances beyond [her] control." *Graham–Humphreys*, 209 F.3d at 560–61. Furthermore, there is not even a hint that Plaintiff was some how lulled, "intentionally misled or tricked into missing the filing deadline." *Garrison v. Warren Corr. Inst.*, 187 F.3d 635, 1999 WL 507015, at *2 (6th Cir.1999) (citing *Andrews v. Orr*, 851 F.2d 146, 150 (6th Cir. 1988) ("The most common situation calling for equitable tolling involves some affirmative representation or action by the employer that causes an employee to miss a filing deadline.")); *Hampton v. Caldera*, 58 Fed.Appx. 158, 160 (6th Cir.2003) (citing *Baldwin County*, 466 U.S. at 151, 104 S.Ct. 1723). Thus, factors one, two, and five do not weigh in Plaintiff's favor.

Lastly and most importantly, factor three, which concerns Plaintiff's diligence in pursuing her rights, weighs heavily against Plaintiff. Plaintiff claims that she began to informally complain about the electrical course requirement in 1997. In 2001, she was still informally complaining. Informally complaining for more than four years does not establish sufficient diligence to justify tolling. *See Williams v. Widnall*, 173 F.3d 431, 1999 WL 68574, at *6–7 (6th Cir.1999) (despite plaintiff's informal complaints of discriminatory conduct, she was not entitled to equitable tolling when

she delayed years in taking formal action); *see also Miller v. Cason*, 49 Fed.Appx. 495, 497 (6th Cir.2002) (habeas petitioner not entitled to equitable tolling when he waited three years to take action); *Clark v. NBD Bank, N.A.*, 3 Fed.Appx. 500, 505 (6th Cir.2001) (plaintiff not entitled to equitable tolling when he waited two years and nine months to take action); *Spencer*, 265 F.Supp.2d at 814–16, 818, 2003 WL 21146713, at *1–2, 4 (habeas petitioner not entitled to equitable tolling when he waited more than four years to take action); *Bomis v. Metro. Life Ins. Co.*, 970 F.Supp. 584, 588–89 (E.D.Mich.1997) (plaintiff not entitled to equitable tolling when he waited more than two years to take action). Had Plaintiff not delayed years in bringing her EEOC charge, the result here may have been different. Nonetheless, the Court agrees with the Sixth Circuit that "[t]he purpose of the filing requirement would be eviscerated were [the Court] to permit [P]laintiff to *wait years upon years* before filing her complaint." *Williams*, 173 F.3d 431, 1999 WL 68574, at *7 (emphasis added). Consequently, Plaintiff is not entitled to equitable tolling, and her civil action is procedurally barred.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 10] is **GRANTED.**

**SO ORDERED.**

## *JUDGMENT*

This civil action having come before this Court, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Plaintiff Paula Doan, **TAKE NOTHING** from Defendant NSK

Corporation, and that the civil action against Defendant be **DISMISSED** on the merits.