*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0435p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JAMES DIXON, JR.,

                         *Plaintiff-Appellant,*

     *v.*

JOHN ASHCROFT, in his capacity as Attorney General of
the United States of America; ROBERT S. MUELLER,
Director of the Federal Bureau of Investigation,

                         *Defendants-Appellees.*

No. 03-1542

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-74476—John Feikens, District Judge.

Argued and Submitted: August 12, 2004

Decided and Filed: December 16, 2004

Before: MOORE and COLE, Circuit Judges; MARBLEY, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Sheila H. Gaskell, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees.
**ON BRIEF:** Benjamin Whitfield, Jr., BENJAMIN WHITFIELD, JR. & ASSOCIATES, Detroit, Michigan,
for Appellant. Sheila H. Gaskell, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees.

———————————

## OPINION

———————————

    ALGENON L. MARBLEY, District Judge. Plaintiff-Appellant, James Dixon, Jr. ("Plaintiff-Appellant" or "Dixon") was a ten-year employee of the Federal Bureau of Investigation ("FBI" or the "Agency") until he resigned in 1988 for personal reasons. Later, in 1991, he sought reinstatement but was denied. Believing the denial was the result of racial discrimination and in retaliation for complaints he had made against a former supervisor, Dixon filed an action with the Equal Employment Opportunity Commission ("EEOC"). A hearing was held and the Administrative Law Judge ("ALJ") determined that Dixon was discriminated against by the FBI. The FBI objected, and after review of the FBI's bases for

———————————

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

objecting and Dixon's Memorandum in Support of the decision, the ALJ reversed her decision and found that the FBI did not engage in discriminatory conduct towards Dixon.

Subsequently, Dixon filed his complaint with the district court, alleging, *inter alia*, a claim for retaliation under Title VII. The FBI moved for dismissal on grounds that Dixon had failed to exhaust his administrative remedies. The district court agreed and dismissed for lack of subject matter jurisdiction. Dixon now appeals from that order, arguing that the district court erred in finding that he did not exhaust his administrative remedies for his retaliation claim. The district court properly exercised jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, and this Court's appellate jurisdiction is proper under 28 U.S.C. § 1291.

For the reasons discussed below, this Court finds that the district court erred in its determination that Plaintiff-Appellant had failed to exhaust the administrative remedies, and, therefore, **REVERSES** the judgment of the district court, and **REMANDS** the case for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual History

Dixon is an African-American male who was employed in the Detroit, Michigan Division of the FBI from 1978 to 1988. During that time, Plaintiff-Appellant worked in various positions, including Applicant Recruiter and Applicant Coordinator. In 1988, Dixon voluntarily resigned to pursue an entrepreneurial venture with his wife. In May 1991, when his wife was able to manage the business on her own, Dixon applied for reinstatement with the FBI.

It is undisputed that during his ten-year tenure Dixon had a good employment record with the FBI. His performance appraisals were either "excellent," "superior," or "fully successful" from 1980-1988. It is unsurprising, then, that the FBI's Administrative Services Division ("ASD") determined that Plaintiff-Appellant met the preliminary requirements for reinstatement consideration and authorized further processing of his application. Next, Dixon submitted an employment application and was interviewed, and the FBI began conducting its updated background investigation. In the course of the background investigation, Agency investigators interviewed employment references provided by Dixon as "friends or acquaintances employed by the FBI," which included Carey Thornton ("Thornton"), John Anthony ("Anthony"), and Larry Kuhl ("Kuhl"). The Bureau also solicited evaluations from Plaintiff-Appellant's former supervisors, including Assistant Special Agent in Charge ("ASAC") Robert Reutter ("Reutter"), regarding whether Dixon was suitable for reinstatement. Reutter was the ASAC in Detroit from November 1981, until October 1986, and his initial responsibilities included the Applicant Program to which Dixon was assigned during the corresponding time frame.

Anthony was interviewed and recommended against reinstating Plaintiff-Appellant. Anthony's negative review was based upon an alleged incident that occurred in the early 1980s, when Dixon was assigned to applicant recruitment in Detroit, and Anthony was the principal FBI-Detroit legal advisor. The two men, along with Special Agent ("SA") Robert Nelson ("Nelson"), sat on an interview panel together, where Dixon was the lead interviewer and responsible for submitting the panel's opinion of the interviewee.

As Anthony recalled the incident, the panel voted to reject a minority applicant, but then Dixon changed the results to a favorable determination without Nelson or Anthony's permission or knowledge. According to Anthony, he confronted Dixon, and Dixon acknowledged that he had changed the rating, and apologized. Because of the incident, however, Anthony questioned Plaintiff-Appellant's integrity and honesty, opining that Dixon was not sufficiently trustworthy to work for the FBI.

Given the incident relayed by Anthony, Bureau investigators also interviewed Nelson. Nelson essentially conveyed to investigators what they heard from Anthony, although Nelson added that, when it happened, he reported Dixon's conduct to then-ASAC Reutter. Apparently, a formal report of the incident

was never made, as evidenced by the fact that Dixon's personnel file with the Agency contained no derogatory information. In Nelson's opinion, the FBI would make a "grave mistake" by rehiring Plaintiff-Appellant because Nelson believed Dixon lacked integrity and fidelity, and could not be trusted.

ASAC Reutter responded to the background inquiry while he was serving as the Special Agent in Charge ("SAC") of the FBI's Philadelphia Division. Reutter recalled that two agents had accused Dixon of changing an applicant's score, and he recalled that Dixon had admitted doing so. Based upon this incident and Reutter's recollection that Plaintiff-Appellant had poor work habits, poor work ethic, and little enthusiasm for his job during his early years with the FBI – Reutter described Dixon's efforts as mediocre at best – Reutter recommended against reinstating Plaintiff-Appellant.

Another of Dixon's former supervisors, SA David Ries ("Ries"), supervised him in 1987 and 1988, and Ries' opinion was that Plaintiff-Appellant demonstrated a lack of commitment, although Ries believed Dixon was capable of performing his duties. Ries also questioned Dixon's dedication and would make no recommendation concerning reinstatement. Kuhl, a former supervisor and one of the referrals provided by Dixon, described Plaintiff-Appellant as competent and articulate and commented favorably on his character, abilities, reputation and loyalty. He recommended Dixon for reinstatement, although he commented that he would have liked to interview Plaintiff-Appellant to discern Dixon's motivations for seeking reinstatement. Finally, Thornton, the last of Dixon's referrals and one of his former co-workers, recommended reinstating him. Thornton opined that Dixon was an effective investigator, "who conducted his business in an appropriate manner."

Based on the results of the background investigation, ASD Personnel Analyst Wendy Strickland ("Strickland") prepared a report, in which she recommended that, "DIXON'S request for reinstatement . . . be denied based on the results of his updated background investigation, specifically the comments of former supervisors and co-workers." Her report was forwarded to ASD Supervisory SA Peter Gulotta ("Gulotta"), who had initial decision-making authority. Gulotta reviewed Strickland's report, including the investigation results, Dixon's personnel file and reinstatement application, and, based on his review, accepted Strickland's recommendation. Gulotta did not speak directly with either Anthony or Nelson prior to making his decision, but he did consider the reports made from their interviews. Gulotta then forwarded his recommendation on to ASD Section Chief Faustino Pino ("Pino"), who concurred in the recommendation. Finally, ASD Assistant Director Weldon Kennedy made the final determination to deny Plaintiff-Appellant reinstatement.

On April 14, 1992, Deputy Assistant Director, Personnel Officer in the ASD, Steven Pomerantz, wrote to Plaintiff-Appellant informing him that, "we are unable to reinstate you at this time and it does not appear likely that we will be able to do so in the future." Dixon claims, however, that he never received this letter and alleges that he did not learn of the Bureau's decision until a 1994 telephone conversation with Gulotta. Thereafter, Plaintiff-Appellant requested his personnel file under the Freedom of Information Act and received it in May of 1997. Upon review of the file, Dixon contacted an Equal Employment Opportunity (EEO) counselor at the FBI's Detroit Division.

Plaintiff-Appellant contends that Reutter gave him a negative recommendation because of Reutter's "bias against African Americans and in retaliation for his (Reutter's) removal as supervisor over the Applicant Program." According to Dixon, while working under Reutter in the early 1980s, Reutter treated him and his African-American co-worker differently than non-African-Americans, about which Dixon complained to one of Reutter's superiors. As a consequence, Plaintiff-Appellant claims that Reutter was removed as supervisor of the Applicant Program. Dixon alleges that the negative comments Reutter made in his background investigation were retaliatory and for the purpose of thwarting his efforts at reinstatement.

### B.  Procedural History

Dixon first contacted an EEO counselor within the FBI in July 1997.  After receiving a Notice of Right to File a Discrimination Complaint, Plaintiff-Appellant, without the assistance of counsel, filed a formal EEO administrative complaint in August 1997.  Plaintiff-Appellant's administrative complaint consisted of two parts: 1) the "Complaint of Discrimination," the form provided by the EEOC that Dixon was required to fill out; and 2) a statement that Dixon wrote and attached thereto, describing what he believed to be the bases of the FBI's alleged discrimination (hereinafter "Attached Statement") (together with the Complaint of Discrimination, the "EEOC Complaint").  On the Complaint of Discrimination, Dixon checked only the box for "Race" and stated afterwards, "Black."

A hearing was held and the ALJ made findings of fact and conclusions of law that, "the Agency discriminated against [Plaintiff-Appellant] because of his race when it denied him reinstatement in March 1992."  That determination, however, was rejected by the United States Department of Justice, Complaint Adjudication Office ("CAO"), and an appeal was taken to the EEOC's Office of Federal Operations.  The EEOC's Office of Federal Operations upheld the CAO's determination that the record did not support the ALJ's finding of discrimination.

Hence, on November 12, 2002, Dixon filed a Complaint in the Eastern District of Michigan, asserting four causes of action: 1) Title VII - Retaliation; 2) 42 U.S.C. § 1983 - Violation of Due Process; 3) Defamation; and 4) Injurious Falsehood.  The Agency moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or alternatively for summary judgment pursuant to Rule 56.  The district court granted the FBI's motion, dismissing Dixon's complaint for lack of subject matter jurisdiction.

Plaintiff-Appellant now appeals from that judgment.

## II.  STANDARD OF REVIEW

This Court reviews a district's court decision to dismiss for lack of subject matter jurisdiction *de novo.  Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996).  Factual findings made by the district court in deciding a motion to dismiss, however, are reviewed for clear error only. *See Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999) (abrogated on other grounds) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 161 (6th Cir. 1993)).

## III.  ANALYSIS

On appeal, Dixon does not challenge the district court's dismissal of his claim under the Fourteenth Amendment and his claims for defamation and injurious falsehood.  Those claims are deemed abandoned. *See Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991) (concluding that any issues not raised by the appellant with respect to the district court's ruling are considered abandoned on appeal and not reviewable by this Court).  Pending for review is Dixon's Title VII retaliation claim.  The district court found that the FBI made the decision not to reinstate Plaintiff-Appellant before he filed his EEOC Complaint; therefore, he was required to include allegations of retaliation in the EEOC Complaint in order to exhaust his administrative remedies.  Because the district court determined that Dixon did not do so, it dismissed the claim for lack of subject matter jurisdiction.

Undoubtedly, federal employees who allege that they have been victims of discrimination must exhaust their administrative remedies. *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991) (stating "[t]he right to bring an action under Title VII regarding equal employment in the federal government is predicated upon the timely exhaustion of administrative remedies . . ."); *see also Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1078 n.4 (6th Cir. 1988).  The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation. *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (citing *EEOC v. Bailey*, 563 F.2d 439, 447 (6th Cir. 1977)).  Plaintiff-Appellant

concedes that he did not check the "Reprisal" box on the Complaint of Discrimination; however, in this Circuit, that failure is not dispositive of whether Dixon exhausted his administrative remedies.

In *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367 (6th Cir. 2002), we reiterated, "the general rule in this circuit . . . that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* at 380 (internal citation omitted); *see also Bray v. Palm Beach Co.*, 907 F.2d 150, 1990 WL 92672, at *2 (6th Cir. June 29, 1990) (finding "the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge"). We explained in *Weigel* that, "[p]ursuant to this rule, we have recognized that 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.'" 302 F.3d at 380 (quoting *Davis*, 157 F.3d at 463). This principle became known as the "expected scope of investigation test." *Weigel*, 302 F.3d at 380.

The determinative inquiry in this case, therefore, is whether Dixon alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of his retaliation claim, despite that he did not check the appropriate box on the EEOC's Complaint of Discrimination form.

A review of Dixon's EEOC Complaint, specifically, the Attached Statement, reveals that Dixon alleged:

> I contend that Bob Reutter discriminated against me, causing the Bureau to do the same, because of Race, fictitious information he received from two other agents *and because the Applicant Program was removed from his direct supervision because of continued harassment*.

(emphasis added). Plaintiff-Appellant goes on to describe how, when he was under Reutter's supervision, he complained to SAC Wayne Davis ("Davis") because Reutter had required him and another agent, the "two Black agents handling the Applicant Program," to report to Reutter weekly, which Dixon and his co-worker resented. Dixon stated, "Mr. Davis took over the [Applicant] program after [redacted name] and I complained about Reutter's continued harassment."

Applying the expected scope of investigation test to this case, we find that the factual allegations were sufficient to put the EEOC on notice that Dixon perceived himself to be a victim of retaliation, in addition to race discrimination. *See Sharabura v. Taylor*, No. 03-CV-1866(JG), 2003 WL 22170601, at *2-3 (E.D.N.Y. Sept. 16, 2003) (*citing Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (where the district court did as the Second Circuit instructed and looked to the "factual allegations made in the [EEOC] charge itself, describing the discrimination conduct about which a plaintiff is grieving," the court held that the plaintiff's race and color claims were reasonably related to her national origin claim because in "the two-page statement [plaintiff] submitted with her EEOC charge . . . her description of the alleged discriminatory conduct . . . would no doubt alert the EEOC of the potential for race and color discrimination claims")). Plaintiff-Appellant's case is unlike others where courts have determined that the plaintiffs did not allege facts in their EEOC complaints to meet the expected scope of investigation test. *See*, *e.g.*, *Pearison v. Pinkertons, Inc.*, No. 1:02-CV-142, 2002 WL 32060142 at *4-5 (E.D. Tenn. Sept. 16, 2002) (citing *Weigel* and finding that the plaintiff had not met the expected scope of investigation test where, in his EEOC complaint, he presented "no factual allegations" that would have prompted the EEOC to investigate the plaintiff's unrelated claim, raised for the first time in his judicial complaint).

In *Doan v. NSK Corp.*, 266 F. Supp. 2d 629, 633 (E.D. Mich. 2003), for example, the court discussed the narrow scope of the EEOC charge, in which the plaintiff detailed only one specific factual basis for her charge of sex discrimination. *Id.* In the case sub judice, however, it is clear from the Attached Statement that Dixon discussed the alleged factual bases of his retaliation claim and also explicitly stated, "I contend that Bob Reutter discriminated against me, causing the Bureau to do the same, because of *Race* . . . ." (emphasis added).

In *Doan*, moreover, the plaintiff referenced only one specific time period for her charge of sex discrimination – the spring of 1997 – but then later sought, in her judicial complaint, to include allegations of harassment occurring in 1997 and 1998. *Id*. at 633-34. Dixon, in contrast, talked about his high performance appraisals as far back as 1980 in the Attached Statement, to contradict Reutter's assessment of his suitability for reinstatement. It seems reasonable that, even in investigating Dixon's claim of race discrimination, the EEOC would have inquired into Plaintiff-Appellant's ten-year work performance and the allegations about Dixon making false reports in the interview process to see if the former undermined the FBI's decision not to reinstate or the latter was credible, such that it was a legitimate, nondiscriminatory reason for refusing to reinstate Plaintiff-Appellant. Evidence of a stellar work history, along with mixed comments and recommendations in interviews with Dixon's peers and superiors, may suggest pretext, for example. The Court is not prepared to penalize Dixon because the EEOC investigation should have been broader in scope. As the Third Circuit reasoned, "if the EEOC investigation is too narrow, a plaintiff should not be barred from raising additional claims in district court." *Robinson v. Dalton*, 107 F.3d 1018, 1026 (3d Cir. 1997).

The Attorney General makes much of a letter to Plaintiff-Appellant from the EEOC in which an Equal Employment Opportunity Officer ("Officer") characterized the issue accepted for investigation as being denied reinstatement based on race.[1] The letter advised Dixon to notify the Officer within fifteen days if the issue had not been identified properly. While Plaintiff-Appellant never notified the Officer of any disagreement with the Officer's characterization of the issue, we find that Dixon's failure to do so is not fatal to his claim. Based on the Attached Statement, Dixon perceived Reutter's harassment to be racially-motivated; thus, Dixon, as a lay person, would not have understood the need to modify the Officer's formulation of his claim. Dixon perceived Reutter's harassment to be racially-motivated, such that Dixon would not have understood the need to correct the Officer's formulation of his claim.

Indeed, as this Court recognized long ago, the rationale for the expected scope of investigation test is that charges of discrimination filed with the EEOC often will be prepared by aggrieved laypersons without the assistance of counsel. *Tipler v. E. I. duPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971); *see also Davis*, 157 F.3d at 463 (explaining "[o]ne reason for the [expected scope of investigation test] is that charges are frequently filed by lay complainants, and the courts recognize that subsequent actions should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include the exact wording which might be required in a judicial pleading") (internal citation omitted); *see also Pearison*, 2002 WL 32060142, at *5 (holding "Pearison need not attach the correct legal conclusions to his factual allegations, conform to legal technicalities, or use the precise wording that might be required in a formal pleading . . . A claimant's written charge to . . . [the] EEOC must be sufficiently precise to identify the parties *and describe generally the discriminatory acts or practices by the employer leading to the administrative complaint*") (emphasis added).

Where, as here, Dixon was not represented or aided by counsel in filing his EEOC Complaint, he will not be punished for not correcting the Officer, when, based upon the Attached Statement, it is clear that the EEOC was put on notice that Plaintiff-Appellant asserted claims both for race discrimination and retaliation.

---

[1] The letter stated, "[t]he issue accepted for investigation is as follows: Whether you were discriminated against based on race (Black) when you were denied reinstatement with the FBI on or about June 3, 1997."

## IV.  CONCLUSION

Plaintiff-Appellant put the EEOC on notice of his claim for retaliation.  Therefore, the judgment of the district court is **REVERSED**, and the case is **REMANDED** for further proceedings in accordance with this Opinion.