**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0595n.06
Filed: August 20, 2007

**05-6582**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DONALD R. BLAKLEY, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and MOORE, Circuit Judges, and SHADUR,[*] District Judge.

PER CURIAM. The defendant, Donald R. Blakley, was charged in a multi-count indictment with conspiracy to knowingly receive and distribute visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(b)(1); 15 counts of knowingly receiving visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2); and possession of one or more electronically-stored visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). A jury convicted Blakley on all 17 counts, and he was later sentenced to 87 months on each count, to be served concurrently. On appeal, the defendant contends that the district court erred in excluding hearsay evidence offered by two defense witnesses

---

[*]The Hon. Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

and that the proof at trial was not sufficient to support his convictions on the conspiracy and receiving counts. We conclude that the evidence was legally insufficient to sustain the conspiracy conviction, but we find no reversible error in connection with the remaining 16 convictions and affirm the judgment of the district court as to those.

## FACTUAL AND PROCEDURAL BACKGROUND

The record in this case indicates that the criminal investigation of the defendant began as the result of a report to police by Blakley's then-wife, Mary Jackson (formerly Mary Blakley), that she had witnessed the defendant viewing a pornographic picture of a child on the computer in their home. Jackson told police that as she walked by the defendant, sitting at the computer in their kitchen, he quickly closed out the screen he had been viewing – but not quickly enough to prevent her from seeing that he was viewing a picture of a female child undressed from the waist up. When she confronted the defendant about what she had seen, he admitted that the child in the picture was only 13 years old.

Jackson's report to the police department was investigated by Officer Tom Busic, who, after obtaining consent from Mary Jackson, seized the computer from the house, along with several unconnected hard-drive units, a scanner, some 100 computer disks, and more than 150 CD-Roms that were near the computer. Upon later examination of the seized evidence, investigators found no sexually explicit photographs of children on the computer itself, but at least 97 such photos were discovered on various CD-Roms and computer disks. Adult pornographic images were also found on the disks, including

"vintage" pornography from the 1920s or 1930s, as well as nude or sexually explicit photos of Mary Jackson and nude photos of another government witness, Janet Hall, who was Jackson's niece from a previous marriage.

Through the testimony of Officer Busic, the government introduced into evidence two of the seized CD-Roms that contained sexually explicit photographs of children, government exhibits 1-B and 1-C, respectively. One of them contained a password-protected "zip" file in which pornographic images of children were stored. The password was "DRB," the defendant's initials. The government also introduced 15 sexually explicit photographs of children printed from the images found on the two CDs, government exhibits 2 through 16, respectively. Each of these photographs had a "web banner," an internet address indicating that the picture had been downloaded from that particular website.

Officer Busic also testified that Blakley had said that the computer was owned by Mary Jackson but admitted that the CDs and disks found near the computer belonged to him. In her testimony, Mary Jackson confirmed that the computer was bought in her name and that she was making payments on it. She explained, however, that she had bought the computer at the defendant's direction, that it was the defendant, not she, who had extensive computer knowledge, and that the defendant used the computer much more than she did. In fact, she said, Blakley often used the computer much of the day and late into the night. Other testimony confirmed that Blakey had more than rudimentary computer

knowledge: Blakley told Busic that the unattached CPUs came from other people's computers that Blakey had "worked on," and another witness testified that Blakley had said that he worked as a computer repair man.

Janet Hall also testified for the government, explaining that unbeknownst to Jackson, she had had an affair with Blakley but that Blakley had broken it off at some point. She also testified that while she was at Jackson and Blakley's home, Blakley was constantly on the computer and that, at one point, she saw Blakley viewing a sexually explicit picture of a child similar to the picture introduced as government's exhibit 13. She said that she did not report the incident at the time because she did not believe that it was "serious." Hall also explained that she came forward with this information only after she had been arrested on drug charges and admitted that as a result of her cooperation, the drug charges were ultimately reduced from a felony to a misdemeanor.

Finally, the government offered the testimony of Detective Christopher Frazier, an expert in computer crime. He testified that the computer and the CD-ROMs found in Jackson's and Blakley's home were manufactured outside Kentucky and that the web banners on exhibits 2 through 16 corresponded to websites operated outside the state. He further testified that by using the National Child Victim Identification program database, he was able positively to identify a number of the children depicted in exhibits 2 through 16 as known victims of child pornography. Frazier admitted that he found no incriminating

evidence on the computer itself and that he did not know whether the computer was used to download or view the images on the CD-ROMs.

The defense produced only two witnesses, Relta Wilson, and her son, Darrell Wilson, both of whom were across-the-street neighbors of Jackson and Blakley for a number of years, including the relevant time period in this case. Both witnesses were prepared to testify that before the defendant was arrested on the charges at issue, Mary Jackson had stated that she was going to "set up" the defendant, meaning that she was going to get him arrested on some kind of charge. The government made a pre-emptive motion, outside of the presence of the jury, to exclude any such testimony as hearsay not subject to an exception and as improper extrinsic evidence of credibility pursuant to Federal Rule of Evidence 608(b). The defense argued in response that the statement either was not hearsay because it was a prior statement by a witness under Federal Rule of Evidence 801(d)(1) or, alternatively, that it fell under the hearsay exception set out in Rule 803(3) because it was offered to prove state of mind with regard to future conduct, *i.e.,* an intent on Jackson's part to "set up" the defendant. The court excluded the statement as hearsay not subject to an exception but allowed the defendant to proffer the Wilsons' testimony in order to preserve the record for review.

As proffered, Relta Wilson's testimony was that sometime before the defendant was arrested, Jackson told her that she was unhappy with her husband and that she was "going to set him up" using "women and dope" and "then it led from that," presumably referring to

child pornography. Relta also testified that she often saw Jackson on the computer late at night but had seen Blakley on the computer only once. Finally, Relta testified that Jackson had come by her house just the night before and threatened her, demanding that she not testify for Blakley.

Likewise, Darrell Wilson testified that right before the defendant went to jail, Jackson said that she was going to "set him up," and "said something about the computer." Later, upon questioning by the court, he contradicted himself and indicated that Jackson had made the "set up" comment after Blakley had already been put in jail. But this testimony conflicted with Darrell's earlier statement that he had not spoken to Jackson since Blakley was jailed. When questioned by the Judge about these inconsistencies, Darrell explained:

> Yeah, as soon as he went to jail, that's when she said it. *Well, she told me that. And then* when he went to jail, she said that she finally got him. And then she did come to the house and she was real shaky and nervous and thinking that – because she knew that she was the one that done it. And she was scared like she was going to jail and stuff because she know she done it. [Emphasis added.]

Presumably this explanation was an attempt (however unconvincing) to indicate that Jackson made two comments, one before and one after the defendant went to jail. Darrell also testified on direct that he often saw Jackson using the computer but never saw Blakley using it – even though he was aware that Blakley had "skills" with computers and that Blakley had tried in the past to repair Darrell's computer. On cross-examination, Darrell

- 6 -

said that once he saw Jackson looking at a "dirty picture[ ]" of a naked boy who appeared to be 14 or 15 years old.

The Wilsons were also allowed to testify in front of the jury but only about Blakley's and Jackson's respective computer use and computer skills and about general background information, such as who lived in the Blakley/Jackson household. Neither witness was allowed to testify about Jackson's "set up" statement or about Jackson's purported threat against Relta Wilson. In addition, Darrell did not testify about observing Jackson viewing the "dirty picture," although that statement does not appear to have been encompassed in the district court's ruling on the motion in limine.

As it turned out, Relta and Darrell contradicted each other in their testimony before the jury. Relta said that it was not possible to see someone on the defendant's computer from the front porch of the Wilsons' house but, instead, one would have to peer through the door of Blakley's house in order to ascertain if someone was using the computer. However, Darrell testified that he could, in fact, see who was using that computer simply by looking into the defendant's house from his own front porch across the street.

Given the guilty verdicts on all counts of the indictment, it is fair to conclude that the jury gave little credence to the testimony of the two defense witnesses. The defendant now appeals the jury's verdict.

## DISCUSSION

**1. Exclusion of Hearsay Testimony**

The defendant argues on appeal that he should have been permitted to present to the jury the proffered testimony excluded by the district court as hearsay, in order to establish his defense that he had been "set up" by Mary Jackson and that she had admitted as much to Relta Wilson and Darrell Wilson. Although the defendant argued at trial that the Wilsons' testimony should have been admitted under the state-of-mind exception to the hearsay rule, citing Federal Rule of Evidence 803(3), he contends on appeal that this evidence was admissible as a statement against interest pursuant to Rule 804(b)(3). But the Wilsons' proffered testimony cannot be admitted under Rule 804(b)(3), because that exception to the hearsay rule applies only when the declarant is unavailable. In this case, declarant Mary Jackson was not unavailable and, in fact, testified at trial.

More persuasive was the argument made by the defendant in district court, *i.e.*, that the testimony was admissible pursuant to Rule 803(3) as a statement of Mary Jackson's then existing state of mind, specifically her intent to "set up" the defendant. Because this argument was not invoked on appeal, however, there is case law in this circuit that would prevent its consideration on appeal. *See*, *e.g.*, *Dixon v. Ashcroft*, 392 f.3D 212, 217 (6th Cir. 2004) (suggesting that waived arguments are "not reviewable"). There is also case law to the contrary. *See McCalvin v. Yukins*, 444 F.3d 713, 723 (6th Cir.) (noting the existence of conflicting authority on waiver and collecting cases, but not deciding the issue), *cert. denied*, 127 S.Ct. 510 (2006). But even if we were to engage in review in this instance, we would be forced to conclude that any error resulting from the district court's

exercise of discretion in excluding the testimony under Rule 803(3) was harmless, at most, both because the excluded testimony was rife with inconsistencies and lacking in detail, and because it was not sufficient to undercut what we conclude was overwhelming evidence of the defendant's guilt. In this regard, we point specifically to the defendant's statements to Officer Busic conceding ownership of the incriminating evidence introduced at trial, as well as his failure to contest on appeal his conviction under 18 U.S.C. § 2252(a)(4)(B) for possession of child pornography.

## 2. Sufficiency of the Evidence

Although not contesting the possession charge, the defendant does challenge the sufficiency of the evidence to sustain his remaining convictions. We review such a claim by "determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the elements of the crime [of conviction] beyond a reasonable doubt." *United States v. Hernandez*, 227 F.3d 686, 694 (6th Cir. 2000). Measured by this standard, the defendant's argument with regard to the 15 counts of the indictment charging receipt fails on the merits, but we find his challenge to the conspiracy count well-grounded.

## *A. Counts Two through Sixteen: Receipt*

The defendant argues that the government introduced legally insufficient evidence that he knowingly received visual depictions of a minor engaged in sexually explicit conduct

because there was no testimony that the photos in question were "transported through interstate commerce" via the computer or otherwise. The defendant acknowledges that each of them contained a "web banner" indicating as its source a particular internet website, but he nevertheless argues that the jury would have to "take a leap" in order to infer that the pictures were actually downloaded by the defendant from those websites. We find this inference perfectly reasonable, however. Simply put, the prosecution presented both direct and circumstantial evidence from which the jury could infer that the defendant used the computer in his residence to view and download the images from the web banner-identified websites, as well as evidence that these websites operated interstate. Applying the standard mandated by *Jackson v. Virginia*, 443 U.S. 307 (1979), we find that the evidence of the defendant's guilt on the receipt counts was legally sufficient to support his convictions on those counts under 18 U.S.C. § 2252(a)(2), in light of proof in the record from which a reasonable fact-finder could conclude that the defendant received these images after they moved through interstate commerce.

### B. Count One: Conspiracy

We find a different situation with regard to the defendant's conspiracy conviction, however. The indictment charged that he "conspire[d] with others to knowingly receive and distribute" the sexually explicit images at issue in this case. Conspiracy, of course, requires

proof of an agreement between or among two or more persons.[1]   Yet the record in this case is devoid of any evidence tending to establish that the defendant reached an agreement with any third party concerning the receipt or distribution of child pornography by computer or otherwise.  Asked at oral argument to identify a co-conspirator with whom an agreement was reached in this case, counsel for the government posited that Blakley had conspired with unknown persons who had uploaded the images onto the various websites from which the defendant had then downloaded them.  It seems evident to us, however, that the images could have been obtained from those websites without any agreement, explicit or implicit, simply by payment of a stated price.  But, as with the purchase of other forms of contraband, the mere act of buying child pornography for personal possession would not be a sufficient basis, standing alone, upon which to sustain a conspiracy conviction.  *See*, *e.g.*, *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) ("a 'buyer-seller relationship' is not enough to make someone a participant in a drug conspiracy") (quoting *United States v. Gibbs*, 182 F.3d 408, 421 (6th Cir. 1999)).  For this reason, we hold that the defendant's conspiracy conviction cannot stand.

**CONCLUSION**

---

[1]The elements of a conspiracy are:  (1) the existence of a criminal agreement, (2) that the defendant knowingly and voluntarily joined, and (3) the defendant's participation in the conspiracy through an overt act. *See United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005), *cert. denied*, 547 U.S. 1034 (2006); *see also* Sixth Circuit Criminal Pattern Jury Instructions, Instruction 3.01A- Conspiracy to Commit an Offense - Basic Elements.

For the reasons stated above, we AFFIRM the district court's judgment as to the defendant's convictions for receipt of and possession of visual depictions of a minor engaged in sexually explicit conduct, under 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2252(a)(4)(B) respectively. We REVERSE that portion of the judgment finding the defendant guilty of conspiracy on count one of the indictment, under 18 U.S.C. § 2252(b)(1). Because the sentence imposed on the conspiracy count, 87 months, was the same as that imposed concurrently on each of the other counts of conviction, there is no basis upon which to require reconsideration of the defendant's sentence. The case must be REMANDED to the district court, however, for the entry of appropriate orders vacating that portion of the judgment related to the defendant's conviction of conspiracy.