Traci Lynette McCALVIN, Petitioner,

v.

Warden Joan YUKINS, Respondent.

No. 02–73447.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 3, 2005.

Neil H. Fink, Kimberly W. Stout, Birmingham, MI, for Plaintiff.

Debra M. Gagliardi, Michigan Department of Attorney General, Lansing, MI, for Defendant.

### AMENDED OPINION AND ORDER GRANTING PETITIONER'S REQUEST FOR HABEAS CORPUS RELIEF

TARNOW, District Judge.

## I. INTRODUCTION

Traci Lynette McCalvin (Petitioner), petitions the Court for *habeas corpus* relief pursuant to 28 U.S.C. § 2254. Petitioner seeks to vacate her state conviction for second-degree murder following the death of Markecia Branch (Decedent), whom Petitioner ran over with her car. The matter was referred to a magistrate, who filed a Report and Recommendation (R & R), rec-

ommending that this Court deny the petition. The Court heard oral argument on April 5, 2004, after which it directed the parties to file supplemental briefs and took the matter under advisement. Having reviewed the supplemental briefs, the Court concludes that Petitioner suffered actual prejudice during the course of the state court adjudication. Accordingly, the Court **GRANTS** her request for relief.

## II. Facts And Procedural History

The incident which led to Petitioner's conviction occurred shortly after midnight on February 14, 1998. Petitioner encountered Decedent at the home of Lidell Smith, who is the father of one of Petitioner's children. Petitioner's car hit Decedent as she stood on Smith's lawn, to the left of the garage.

The police escorted Petitioner to the police station around 1:30 a.m. on February 14, 1998. From approximately 5:00 a.m. until 7:30 a.m., she was interrogated by two police officers, Palmer and Shadwell. Petitioner told the officers that Decedent's death was an accident. She explained that she had intended to back out of Smith's driveway, not realizing that her car was in drive, rather than reverse.

After Palmer and Shadwell completed their interrogation, Officer Christopher Helgert interrogated Petitioner for approximately one and one-half hours. Petitioner initially told Helgert the same story she had told the other officers, but later confessed to him that she had intended to scare Decedent.[1] According to Petitioner, Helgert told her that "she would go to prison for first-degree murder and that she would lose her children if she did not change her story and admit that she tried to scare the victim by driving toward her."

Petitioner was charged with first-degree murder, and a jury trial began in September 1998. Helgert testified that he believed Petitioner gave answers "that defied common sense and that he told her they did not match the evidence at the scene of the incident." He denied threatening Petitioner but admitted telling her "that if she planned to kill the victim, she could go to prison for first-degree murder and would have no contact with her children." After cross-examining Helgert, Petitioner's attorney moved *in camera* to suppress the confession on the ground that it was the product of coercion. The coercion argument was based not only on Helgert's statements regarding visitation but his assurance that the prosecutor would likely be lenient if Petitioner admitted trying to scare Decedent.[2]

The trial court denied Petitioner's motion on the grounds that (1) it did not want to declare a mistrial; (2) cross-examination by Petitioner's attorney had been thorough; (3) a curative instruction would have been futile; and (4) Petitioner waived the issue by failing to raise it prior to trial. The jury convicted Petitioner of second-degree murder, and the court sentenced her to fifteen to thirty years in prison.

Petitioner appealed her conviction, arguing that the trial court erred in refusing to suppress the statement she made to Helgert; and, if her trial attorney was deemed to have waived the right to file a suppression motion, that waiver amounted to ineffective assistance of counsel. On December 26, 2000, the Michigan Court of Appeals affirmed the conviction, finding that Petitioner had failed to preserve her

---

1. There were no recordings of the interrogations admitted into evidence.

2. There was no testimony elicited from Officer Helgert regarding the alleged assurance of prosecutorial leniency.

first issue for appellate review and that her trial attorney was not constitutionally ineffective. *People v. McCalvin*, No. 215150, 2000 WL 33385191 (Mich.App. Dec. 26, 2000) (unpublished). On August 28, 2001, the Michigan Supreme Court denied Petitioner's application for leave to appeal, stating, "[W]e are not persuaded that the questions presented should be reviewed by this Court." *People v. McCalvin*, No. 118411, 465 Mich. 863, 634 N.W.2d 354 (2001).

Petitioner filed a petition for writ of *habeas corpus* in this Court on August 27, 2002. The Court conducted a hearing on April 5, 2004.

### III. STANDARD OF REVIEW

■ Because Petitioner filed the instant petition in 2002, it is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, relief is available with respect to those claims adjudicated on the merits in state court only if the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A *habeas* petitioner must establish "actual prejudice" resulting from a constitutional error. *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir.1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

### IV. ANALYSIS

The issues to be decided by this Court are whether: (1) the confession should have been suppressed; (2) the Michigan Court of Appeals erred in determining that Petitioner procedurally defaulted on that issue; (3) Petitioner's counsel was constitutionally ineffective for failing to timely move to suppress the confession; and (4) admission of the confession was harmless error. The issues of procedural default and ineffective assistance of counsel are inextricably intertwined and will be discussed jointly.

### A. The Confession

■ According to Petitioner, Helgert told her that, if she did not change her story and admit that she tried to scare Decedent by driving toward her, she would be convicted of first-degree murder, go to prison, and lose her children. The Michigan Court of Appeals concluded:

[I]n the instant case, [Officer] Helgert's testimony showed that he merely informed defendant that if a judge or jury believed that she intended to kill the victim and she went to prison for first-degree murder, she would not have contact with her children. Moreover, the record in this case, in contrast to the record in [*United States v. Tingle*, 658 F.2d 1332 (9th Cir.1981)], does not reflect that defendant felt great psychological distress during the interview with Helgert. Again, Helgert described defendant as quiet, calm, and unemotional during the interview. The interview in this case simply did not rise to the level of coercion requiring reversal in [*Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963)], and *Tingle*. Helgert's testimony suggests that he merely informed defendant of the consequences of the charges involved in light of the victim's death, should defendant be convicted, and did not make any promises in exchange for cooperation.

*McCalvin*, 2000 WL 33385191, at *2. Although it discussed the merits of the issue,

the Court of Appeals ultimately held that Petitioner waived the suppression issue by failing to raise it prior to trial.

As she did in state court, Petitioner relies upon *Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), and *United States v. Tingle*, 658 F.2d 1332 (9th Cir.1981). In *Lynumn*, the petitioner confessed after the police told her that, if she did not "cooperate," she would lose state aid for her children, and her children would be taken away. These threats were made while the petitioner was encircled in her apartment by three officers and the person who had purportedly set her up. The petitioner had never been in trouble with the law. The Supreme Court found that the confession was coerced. *Lynumn*, 372 U.S. at 534, 83 S.Ct. 917.

In *Tingle*, the investigating agent expressly told the petitioner that she had "a lot at stake" and would not see her child "for a while" if she did not cooperate. He also told her it was in her best interest to cooperate; her cooperation would be communicated to the prosecutor; and, if she failed to cooperate, he would inform the prosecutor that she was "stubborn" or "hard-headed." The court concluded:

> We think it clear that the purpose and objective of the interrogation was to cause [petitioner] to fear that, if she failed to cooperate, she would not see her young child for a long time. We think it equally clear that such would be the conclusion which [petitioner] could reasonably be expected to draw from the agent's use of this technique. The relationship between parent and child embodies a primordial and fundamental value of our society. When law enforcement officers deliberately prey upon the maternal instinct and inculcate fear in a mother that she will not see her child in order to elicit "cooperation," they exert ... "improper influence".... The warnings that a lengthy prison term could be imposed, that [petitioner] had a lot at stake, that her cooperation would be communicated to the prosecutor, that her failure to cooperate would be similarly communicated, and that she might not see her two-year-old child for a while must be read together, as they were intended to be, and as they would reasonably be understood. Viewed in that light, [the agent's] statements were patently coercive.

*Tingle*, 658 F.2d at 1336.

Petitioner was in a more vulnerable position than was the petitioner in *Lynumn*, because she was alone in an unfamiliar surrounding when Helgert made the statements regarding visitation. Even if Petitioner did not appear to Helgert to be in distress, as did the petitioner in *Tingle*, Helgert's statements cannot be deemed innocuous. He admitted telling her that, if she were convicted of first-degree murder, she would never again have contact with her children.[3] He also admitted that, by making this statement, he was attempting to throw her a "hook." Most significantly, Petitioner had been in custody for approximately eight or nine hours—all the while maintaining that Decedent's death was an accident—when she made the confession. The statements definitely played upon Pe-

---

**3.** This statement was false, given that the Department of Corrections' visitation policy does not distinguish between those who are convicted of first-degree murder and other types of offenders. *See* Mich. Admin. Code R. 791.6609—Limits on Visitation. The right of prisoners to visits from family members is guaranteed by the United States Constitution. This Court has previously noted that "[f]amily relationships are closely protected by the United States Constitution. The family relationship involves a zone of privacy emanating from the recognition that such relationships are fundamental in our societal and political system." *O'Bryan v. Saginaw County*, 437 F.Supp. 582, 598 (E.D.Mich.1977).

titioner's maternal instinct and were coercive. *See People v. Robinson*, 386 Mich. 551, 558, 194 N.W.2d 709 (1972) (recognizing that threats involving family members impact the voluntariness of detainees' statements). The Court of Appeals' application of federal law was, therefore, unreasonable and contrary to established federal law.

## B. Procedural Default

In determining whether a *habeas* petitioner's claim has been procedurally defaulted, a district court must consider four factors. First, the court determines whether there is a firmly established state procedural rule with which the petitioner failed to comply. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). Second, the court asks whether the state court actually enforced the rule. *Id.*

■ Here, the Michigan Court of Appeals determined that Petitioner waived the suppression issue because she did not file a pretrial motion to suppress. *See People v. Soltis*, 104 Mich.App. 53, 304 N.W.2d 811 (1981), and *People v. Mitchell*, 44 Mich.App. 679, 205 N.W.2d 876 (1973), *overruled on other grounds by People v. Mitchell*, 402 Mich. 506, 265 N.W.2d 163 (1978). Despite this finding of procedural default, the court reviewed the issue for plain error. Petitioner argues that, by addressing this issue, the Court of Appeals waived the issue of procedural default. This argument, however, is incorrect. In *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir.2003), the Sixth Circuit explained that, where a state court relies on procedural default but addresses the merits in the alternative, the claim is procedurally defaulted. In *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.2001), the Court stated, "[W]e view a state appellate court's review for plain error as the enforcement of a procedural default." *See also Dumas v. Pitcher*, 80 Fed.Appx. 386, 387–88, 2003

WL 21801460 (6th Cir.2003) (unpublished) (finding procedural default where state court noted that the petitioner did not object to jury instructions at trial, thereby failing to preserve error, and conducting only plain error review).

■ The court next asks whether the petitioner's failure to comply with the state procedural rule constitutes an adequate and independent ground upon which to bar federal review. *Maupin*, 785 F.2d at 138. In *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that the failure to timely object to the admission of a confession, where a Florida law required a petitioner to challenge the confession at trial or not at all, constituted an adequate and independent state ground which precluded federal review. Finally, the court determines whether the petitioner can demonstrate cause to disregard the state procedural rule and actual prejudice resulting from the alleged constitutional error. *Maupin*, 785 F.2d at 138. *See also Wainwright*, 433 U.S. at 87, 97 S.Ct. 2497; *Bowling*, 344 F.3d at 497.

### 1. Cause

■ Generally, "cause" must be something external to the petitioner and the defense. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir.2003). Ineffective assistance of counsel may constitute cause if it rises to the level of constitutionally ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Coleman v. Thompson*, 501 U.S. 722, 753–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray*, 477 U.S. at 488, 106 S.Ct. 2639. Ineffective assistance of counsel is also a substantive claim which gives rise to an independent constitutional violation.

This Court must determine whether Petitioner's trial attorney was constitutionally ineffective for failing to timely move to suppress her confession. Because Petitioner failed to object to her attorney's performance in the trial court, the Michigan Court of Appeals limited its review to the facts apparent in the lower court record. *See People v. Fike,* 228 Mich.App. 178, 577 N.W.2d 903, 905 (1998). The court rejected Petitioner's ineffective assistance argument on the grounds that her attorney's action in delaying the motion to suppress was due to trial strategy and the confession was properly admitted.

A petitioner seeking to establish ineffective assistance of counsel must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The first *Strickland* requirement refers to attorney competence, whereas the second requirement refers to prejudice.

***Deficient Performance.*** Under *Strickland,* there is a strong presumption of attorney competence. *Strickland* requires that a reviewing court "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. During the *in camera* discussion on the motion to suppress, Petitioner's attorney explained that he elected not to file a pretrial motion for two reasons: (1) He did not want to give the prosecutor time to "gather his forces, if you please, and to respond to the inquiry regarding the voluntariness of the confession in a manner other than he would if confronted by a jury"; and (2) he knew the trial judge's history and did not believe the judge would be sympathetic to the issue.

■ In *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Supreme Court stated that "the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." The Court also indicated that an attorney's failure to timely file a suppression motion does not constitute ineffective assistance of counsel if the failure is due to strategic reasons. *Id.* at 384–85, 106 S.Ct. 2574. Attorney strategy, however, must be sound. *Id.* at 384, 106 S.Ct. 2574. In *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974), the Sixth Circuit stated, "Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." Further:

> Defense strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent deny a criminal defendant the effective assistance of counsel, if some other action would have better protected a defendant and was reasonably foreseeable as such before trial.

*Id.*

■ Respondent insists that the "strategy" employed by Petitioner's trial attorney was sound. This Court disagrees and finds the instant case similar to *Hamblin v. Mitchell,* 354 F.3d 482 (6th Cir.2003). There, an attorney, representing a client who had been convicted of murder, failed to investigate and present mitigating evidence regarding the client's mental condition at the penalty phase of the trial. The attorney gave two strategic reasons for this failure: He feared such an investigation might not reveal any psychological problems or brain injury, thereby preventing a mitigation defense based on those

factors; and his client told him not to present mitigation evidence. The Sixth Circuit concluded that the attorney's first stated reason "does not make sense. Because counsel does not know what an investigation will reveal is no reason not to conduct the investigation. Counsel was obligated to find out the facts, not to guess or assume or suppose some facts may be adverse." *Id.* at 492.

Similarly, this Court finds that the reasons cited by Petitioner's attorney do not make sense. Especially telling is the trial court's comment that a curative instruction would be inadequate. If the motion had been timely filed, the trial court would not have been faced with starting a new trial as it was here. Despite *Strickland's* strong presumption of attorney competence, the Court concludes that the strategy espoused by Petitioner's trial attorney fell below an objective standard of reasonableness.

■ *Prejudice.* The Court's analysis is complicated by the fact that ineffective assistance of counsel, which is both a substantive claim and potential cause to excuse procedural default, contains its own prejudice requirement. As will be discussed below, a court analyzing prejudice under the cause and prejudice test must assume that the petitioner has stated a claim of constitutional magnitude. *Maupin,* 785 F.2d at 139. However, when the underlying substantive claim is ineffective assistance of counsel, a petitioner who successfully establishes cause and prejudice must still demonstrate *Strickland* prejudice in order to prevail on the underlying claim. *Moore v. Carlton,* 74 F.3d 689, 692 (6th Cir.1996).

The cause and prejudice test and the *Strickland* prejudice test, however, seem to overlap. "Prejudice" under the cause and prejudice test requires a showing that there was prejudice which worked to a petitioner's "*actual* and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).[4] In other words, a petitioner must show actual prejudice. *Strickland* requires a showing that there is a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. This Court is of the opinion that any difference in these two standards is semantic and/or negligible. *See, e.g., Kimmelman,* 477 U.S. at 374, 106 S.Ct. 2574 ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

Moreover, a determination of prejudice under either the cause and prejudice test or *Strickland* depends on the same operative fact—the extent to which the admission of Petitioner's confession impacted the verdict. Therefore, the Court's prejudice inquiry under the cause and prejudice test will be essentially the same as that undertaken here.

■ The Court must determine whether the admission of Petitioner's confession rendered the verdict suspect. To establish second-degree murder in Michigan, the

---

4. In *Nagi v. United States,* 90 F.3d 130, 135 n. 1 (6th Cir.1996), the Sixth Circuit recognized that "the precise meaning of 'prejudice' is somewhat nebulous[;] it has been interpreted as an infection of the entire proceeding which results in a conviction violative of due process." (Quoting *United States v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

prosecution must show "that the defendant caused the death of the victim and that the killing was done with malice and without justification or excuse." *People v. Harris,* 190 Mich.App. 652, 659, 476 N.W.2d 767 (1991). Malice is "the intent to kill, the intent to do great bodily harm, or the intent to create a high risk of death or great bodily harm with knowledge that such is the probable result." *Id.* Malice may be inferred from the facts and circumstances surrounding a killing. *Id; People v. Kemp,* 202 Mich.App. 318, 322, 508 N.W.2d 184 (1993).

█ There is no dispute that Petitioner was driving the car which killed Decedent. However, there is—and has always been— a dispute as to Petitioner's intent. Petitioner testified that she had intended to back out of Smith's driveway, not realizing initially that her car was in drive, rather than reverse. As the car began to move forward, toward Decedent, she saw the brake lights of Decedent's vehicle (which was in front of her and being moved by Smith), and swerved to the left to avoid hitting the vehicle or Decedent, who was standing on the lawn to the left of Smith's driveway.

Smith, who was moving Decedent's vehicle, did not see how the incident occurred. Gina Barnett, a cousin of Decedent who arrived on the scene shortly after the incident, testified that she asked Petitioner what happened to Decedent. Petitioner responded, "your cousin shouldn't have been in this house." Such a statement, however, is ambiguous and not necessarily indicative of intent.

The State's expert, Donald Holmes, opined that the killing was not an accident. Petitioner's expert, Thomas Bereza, testified consistently with Petitioner's version of the events. The jury, therefore, was presented with the task of determining which expert was more believable.

In her supplemental brief, Petitioner pointed out that the jury requested clarification of the legal definition of "knowingly," as used in the state of mind component of the second-degree murder instruction. Petitioner argued that the jury's only impetus for that question was her confession. Petitioner also argued that the government relied substantially upon the confession. Indeed, the prosecution made several references to the confession during rebuttal argument.

This Court need not presume to know why the jury sought clarification of the word "knowingly." Respondent agreed that the confession was a significant factor in Petitioner's conviction. Because the evidence in this case was not overwhelmingly one-sided, this Court is convinced that the admission of Petitioner's confession made the inference of malice much more likely and rendered the verdict suspect. The Court, therefore, concludes that Petitioner has demonstrated prejudice under the *Strickland* test.

### 2. Prejudice

█ In *Maupin,* the Sixth Circuit established a three-step test for determining prejudice under the cause and prejudice test. First, the claimed prejudice must be a result of the alleged constitutional violation, not the result of the trial attorney's failure to meet procedural guidelines. *Maupin,* 785 F.2d at 139. Thus, this Court must determine whether Petitioner was prejudiced by the admission of her confession. Next, the Petitioner has the burden of proving actual prejudice. Third, a court analyzing a claim of prejudice should assume that the petitioner has stated a meritorious constitutional claim. *Id.*

The analysis of prejudice undertaken by the Court in the previous section is essentially the same as that required to over-

come a procedural default. Petitioner has demonstrated actual prejudice as the result of a constitutional violation. Thus, the Court concludes that she has established prejudice under the cause and prejudice test.

### C. Harmless Error

 In the context of federal *habeas corpus* review, a constitutional error which implicates trial procedures is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710. If a court is convinced that the error had more than a slight influence, the verdict and judgment must be overturned. *O'Neal v. McAninch,* 513 U.S. 432, 435–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

This Court is convinced that the admission of Petitioner's confession made the inference of malice much more likely. Therefore, the trial court's error was not harmless. On the contrary, it had a "substantial and injurious effect" on the jury's verdict.

### V. Conclusion

The Court concludes that the Michigan Court of Appeals' determination that Petitioner's confession was not the product of coercion rests upon an unreasonable application of federal law. Additionally, Petitioner's trial attorney was constitutionally ineffective for failing to timely move to suppress the confession. The Court further concludes that the admission of the confession made the inference of malice much more likely and rendered the verdict suspect. Thus, Petitioner has demonstrated cause and actual prejudice to overcome her procedural default.

Accordingly, the petition for writ of *habeas corpus* is **GRANTED**. The State shall either release Petitioner from custo-

dy or institute proceedings to retry her within 120 days of the date of this order.

**IT IS SO ORDERED.**