RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

TRACI LYNETTE MCCALVIN,

*Petitioner-Appellee,*

*v.*

No. 05-1111

JOAN YUKINS, Warden,

*Respondent-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73447—Arthur J. Tarnow, District Judge.

Argued: February 1, 2006

Decided and Filed: April 5, 2006

Before: COLE, GIBBONS, and ROGERS, Circuit Judges.

―――――――――――

**COUNSEL**

**ARGUED:** Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL APPELLATE DIVISION, Lansing, Michigan, for Appellant. Neil H. Fink, LAW OFFICES OF NEIL H. FINK, Birmingham, Michigan, for Appellee. **ON BRIEF:** Debra M. Gagliardi, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL APPELLATE DIVISION, Lansing, Michigan, for Appellant. Neil H. Fink, Kimberly W. Stout, LAW OFFICES OF NEIL H. FINK, Birmingham, Michigan, for Appellee.

ROGERS, J., delivered the opinion of the court, in which GIBBONS, J., joined. COLE, J. (pp. 9-11), delivered a separate dissenting opinion.

―――――――――――

**OPINION**

―――――――――――

ROGERS, Circuit Judge. At issue in this habeas case is the voluntariness of Traci L. McCalvin's confession. McCalvin was convicted of second-degree murder. During her trial, McCalvin moved to suppress her confession, but the trial court denied the motion as untimely because under Michigan law such motions generally must be filed before trial unless special circumstances are present. The district court granted McCalvin a writ of habeas corpus, ruling that there existed cause and prejudice sufficient to excuse her procedural default because she had established that her counsel rendered ineffective assistance by failing to file the motion to suppress before trial. The district court then found McCalvin's confession involuntary because, among other

things, a detective told McCalvin that, if she were convicted of first-degree murder, she would not have contact with her family, including her children. We reverse.

## I.

Around midnight on February 14, 1998, McCalvin visited the home of Lidell Smith, her former boyfriend and the father of her son. Smith and McCalvin talked in Smith's driveway for approximately 35-40 minutes. McCalvin got into her car to leave, however, when Markecia Branch, Smith's current girlfriend, walked out of the house. As Branch stood on Smith's lawn, McCalvin's car pulled forward and hit her. Branch became trapped under the car and died.

Police officers escorted McCalvin to the police station around 1:30 a.m. Officers informed McCalvin of her *Miranda* rights, and McCalvin signed a waiver form. McCalvin stated that she had no medical problems, was not under the influence of alcohol or drugs, and understood English. McCalvin was twenty-seven years old and had never been in jail before. She was a high school graduate.

Between approximately 5:00 a.m. and 7:30 a.m., Detectives Palmer and Shadwell interrogated McCalvin. The interrogation began with McCalvin giving her version of how Branch died. McCalvin told the detectives that Branch's death was an accident. McCalvin stated that she had only attempted to back her car out of Smith's driveway. She thought that she put the car into reverse, but instead she accidentally put it into drive. When McCalvin pressed the gas pedal, her car lunged forward and hit Branch. After the first forty-five minutes of the interrogation, the detectives allowed McCalvin a twenty-minute break. McCalvin drank coffee.

When the interrogation resumed, the detectives had McCalvin repeat her story. During this portion of the interrogation, the detectives permitted McCalvin to take several breaks. McCalvin was able to use the restroom and call her mother. Before ending the interrogation, the detectives had McCalvin write down her version of what happened that night. McCalvin's story never changed during this stage of the interrogation.

Detective Helgert then took over the interrogation for approximately the next one and one-half hours. McCalvin declined any food, coffee, or water. For the first thirty to forty-five minutes, McCalvin continued to maintain that Branch's death was an accident. During this time, however, Helgert became more confrontational. He told McCalvin that the officers did not believe her. He gave her a "hook," a question that aims to get a defendant to admit to a crime while simultaneously shifting the blame away, by asking McCalvin if she had merely tried to scare Branch by driving towards her. McCalvin testified at her trial that Helgert told her that if she changed her story, the prosecutor might drop the charges. She also testified that Helgert told her that she could go home if she changed her story to say that she had intended to only scare Branch. Helgert never admitted to promising McCalvin anything, *see* J.A. at 648-49, but he testified that he told McCalvin that if she went to prison for first-degree murder, she would spend the rest of her life in prison and would not have contact with her family, including her children, J.A. at 613-15.[1]

According to Helgert, McCalvin suddenly looked at him and said, "I did it." McCalvin stated that she drove her car towards Branch to scare her. Helgert then reduced McCalvin's

---

[1]The district court concluded that "[t]his statement was false, given that the Department of Corrections' visitation policy does not distinguish between those who are convicted of first-degree murder and other types of offenders." *McCalvin v. Yukins*, 351 F. Supp. 2d 665, 669 n.3 (E.D. Mich. 2005). However, this statement was not necessarily false. It does not say that McCalvin would *never* have contact with her family. It only says that she "would not" have contact with her family. Most people would hardly consider prison visitation "contact" with one's family in the normal sense.

admissions to written questions and answers. According to Helgert, he never threatened McCalvin or told her what to write. He maintained that McCalvin was "quite unemotional" during the interrogation. Before the interrogation ended at approximately 10:00 a.m., McCalvin had not asked for the interrogation to stop.

## II.

McCalvin was charged with first-degree murder, and a jury trial began in September 1998. After Detective Palmer, Detective Helgert, and McCalvin testified, the defense moved to suppress McCalvin's confession on the ground that it was coerced and therefore involuntary. Defense counsel explained at the time why he had not made such a motion earlier: he had made a "calculated decision" not to file a motion to suppress before the trial for two reasons. First, he did not want Helgert "to gather his forces . . . and to respond to the inquiry regarding the voluntariness of the confession in a manner other than he would if confronted by a jury." Second, because of the judge's "conservative" nature, he had thought that a pre-trial motion to suppress would not have been successful.

The trial court denied McCalvin's motion to suppress. The court gave four reasons for its denial: (1) the court did not want to declare a mistrial; (2) defense counsel's cross-examination of Helgert was "very effective;" (3) defense counsel spent so much time on the issue of the confession that a curative instruction would have been futile; and (4) McCalvin waived the issue by failing to raise it before trial. The jury convicted McCalvin of second-degree murder, and the court sentenced her to fifteen to thirty years of imprisonment.

McCalvin appealed her conviction, arguing that the trial court erred in refusing to suppress her confession, and, if her trial counsel was deemed to have waived the right to file a motion to suppress, that waiver amounted to ineffective assistance of counsel. The Michigan Court of Appeals nevertheless affirmed her conviction. *People v. McCalvin*, No. 215150, 2000 WL 33385191, at \*4 (Mich. Ct. App. Dec. 26, 2000). The court of appeals held that, under Michigan law, no special circumstances justified defense counsel's delay in bringing the motion to suppress. *Id.* at \*1. The trial court thus did not abuse its discretion in denying McCalvin's motion. *Id.*

In the alternative, the Michigan Court of Appeals held that the trial court's denial was not plain error because McCalvin had made her statement voluntarily. *Id.* at \*3. The court based this decision on the totality of the circumstances surrounding McCalvin's confession, noting that McCalvin signed a *Miranda* waiver; McCalvin was of sufficient maturity to understand her rights because she was in her mid-twenties, a high school graduate, not ill or injured, and not under the influence of alcohol or drugs; the police did not question McCalvin for an inordinate amount of time; McCalvin received several breaks during the interrogations; the police offered McCalvin food and drink; and Helgert testified that McCalvin was unemotional during the interrogation. In addition, the court held that McCalvin's interrogation differed from the interrogation deemed coercive in *Lynumn v. Illinois*, 372 U.S. 528 (1963), where police explicitly told the defendant that her children would be taken from her if she did not cooperate. *McCalvin*, 2000 WL 33385191, at \*2. Unlike in *Lynumn*, Helgert admitted only to discussing the consequences of a first-degree murder conviction. *Id.*

Finally, the Michigan Court of Appeals held that McCalvin's trial counsel had not rendered ineffective assistance of counsel. *Id.* at \*4. Counsel's decision to wait to bring a motion to suppress was not objectively unreasonable because the decision constituted a trial strategy and such a strategy was reasonable as a pre-trial motion likely would have been denied. *Id.* at \*3. Because a pre-trial motion would have been denied, the court also held that counsel's actions did not prejudice McCalvin. *Id.* at \*4. The Michigan Supreme Court denied discretionary review.

In August 2002, McCalvin filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), raising two grounds for relief. First, McCalvin argued that the Michigan Court of Appeals' determination that her confession was voluntary was contrary to clearly established federal law as set forth in *Lynumn v. Illinois*, 372 U.S. 528 (1963), and *United States v. Tingle*, 658 F.2d 1332 (9th Cir. 1981). Second, McCalvin argued that the Michigan Court of Appeals' determination that her attorney provided effective assistance of counsel was also contrary to federal law. The matter was referred to a magistrate, who filed a Report and Recommendation, recommending that the district court deny McCalvin's petition.

In December 2004, the district court granted McCalvin's request for habeas relief on both grounds. *McCalvin v. Yukins*, 351 F. Supp. 2d 665, 674 (E.D. Mich. 2005). The court ruled that it could reach the merits of McCalvin's coercion claim because, under the four-factor test set forth in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), her procedural default was excused. *McCalvin*, 351 F. Supp. 2d at 670-74. Cause and prejudice sufficient to excuse the procedural default existed because McCalvin's counsel had rendered ineffective assistance by failing to file a pre-trial motion to suppress.[2] *Id.* at 671-73. The court ruled that, under *Strickland v. Washington*, 466 U.S. 668 (1984), it was objectively unreasonable for counsel to wait to file a motion to suppress merely because he did not want to give the prosecutor time to "gather his forces" and because he thought that a motion would not succeed due to the trial court judge's "conservative" nature. *Id.* at 671-72. In addition, McCalvin had demonstrated prejudice because the admission of her confession made the inference of malice more likely and rendered the jury verdict suspect. *Id.* at 672-73.

Reaching the merits of the coercion claim, the district court ruled that McCalvin's confession was involuntary. *Id.* at 669-70. The court likened the circumstances surrounding McCalvin's confession to those deemed coercive in *Lynumn v. Illinois* and *United States v. Tingle*:

> Petitioner was in a more vulnerable position than was the petitioner in *Lynumn*, because she was alone in an unfamiliar surrounding when Helgert made the statements regarding visitation. Even if Petitioner did not appear to Helgert to be in distress, as did the petitioner in *Tingle*, Helgert's statements cannot be deemed innocuous. He admitted telling her that, if she were convicted of first-degree murder, she would never again have contact with her children. . . . Most significantly, Petitioner had been in custody for approximately eight or nine hours—all the while maintaining that Decedent's death was an accident—when she made the confession. The statements definitely played upon Petitioner's maternal instinct and were coercive.

*Id.* at 669-70 (footnote omitted). The district court held that, because McCalvin's confession was coerced, the decision of the Michigan Court of Appeals affirming the trial court's denial of the motion to suppress was unreasonable and contrary to established federal law. *Id.* at 670. The district court found that these constitutional errors were not harmless, and it therefore granted McCalvin's petition for a writ of habeas corpus. *Id.* at 674.

---

[2]The district court opinion is not entirely clear as to whether the court granted habeas relief on two grounds—the coerced confession and ineffective assistance of counsel—or only one ground—the coerced confession, with a finding of ineffective assistance only to excuse the procedural default. In our view, there were two grounds for relief. McCalvin raised the coerced confession and ineffective assistance as two separate claims in her habeas petition. In addition, the district court's own language supports this interpretation: "Ineffective assistance of counsel *is also a substantive claim* which gives rise to an independent constitutional violation." *McCalvin*, 351 F. Supp. 2d at 670 (emphasis added).

The State now appeals, arguing that it was neither contrary to, nor an unreasonable application of, clearly established federal law for the Michigan Court of Appeals to hold that McCalvin's trial counsel had rendered effective assistance.[3]

## III.

The district court erred in granting McCalvin's habeas petition because it was not contrary to, or an unreasonable application of, clearly established federal law for the Michigan Court of Appeals to hold that McCalvin's confession was voluntary. Upon weighing the totality of the circumstances surrounding McCalvin's confession, it was objectively reasonable for the Michigan Court of Appeals to hold that McCalvin's will was not overborne. Moreover, the interrogation of McCalvin is distinguishable from the interrogation deemed coercive in *Lynumn v. Illinois*, 372 U.S. 528 (1963). Because McCalvin's due process voluntariness claim fails, her ineffective-assistance-of-counsel claim also must fail because she could not have suffered prejudice from her counsel's failure to make a timely motion to suppress her confession.

McCalvin filed her habeas petition in August 2002; thus, her case is governed by 28 U.S.C. § 2254(d), as amended by the AEDPA of 1996. *See Smith v. Stegall*, 385 F.3d 993, 997 (6th Cir. 2004). Section 2254(d) provides, in relevant part, that a petition for a writ of habeas corpus shall be denied by the district court unless the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d). "Clearly established federal law," refers to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state-court decision constitutes an "unreasonable application" of clearly established federal law if the court invokes a Supreme Court case and unreasonably extends its legal principle to a new context where it should not apply or fails to extend it to where it should apply. *Id.* at 407. A "federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable."[4] *Id.* at 409. In this case, the district court held that the decision of the Michigan Court of Appeals was unreasonable because it was coercive for Detective Helgert to tell McCalvin, after she had been in custody for eight to nine hours, that she would not have contact with her family, including her children, if she were convicted of first-degree murder.[5]

---

[3] Rather than asserting the voluntariness of McCalvin's confession as a freestanding argument, the State appears to raise voluntariness as part of its challenge to the district court's ineffective-assistance-of-counsel ruling. The State argues that, because the trial court would have found McCalvin's confession voluntary even had her counsel timely filed the motion to suppress, McCalvin cannot satisfy the *Strickland* prejudice requirement. Thus, we properly examine the voluntariness of McCalvin's confession regardless of whether on appeal the State presented it independently or as part of its ineffective-assistance-of-counsel argument.

[4] In *Williams*, the Supreme Court clarified that the "contrary to" or an "unreasonable application of" clauses are independent tests and must be analyzed separately. 529 U.S. at 407. Because the district court's decision rested upon the "unreasonable application" prong, *see McCalvin v. Yukins*, 351 F. Supp. 2d 665, 674 (E.D. Mich. 2005), we examine whether the decision of the Michigan Court of Appeals was objectively reasonable.

[5] Although McCalvin testified that Helgert promised her leniency if she changed her story, the district court did not rely on that testimony in its decision. The state-trial court did not make any factual findings regarding Helgert's statements because it ruled that McCalvin's motion to suppress was untimely. Thus, the only support in the record for McCalvin's allegations is her testimony.

Under the deference to state-court determinations required by AEDPA, however, we cannot say that the Michigan Court of Appeals unreasonably applied federal law as reflected in Supreme Court precedents. Under clearly established Supreme Court law, "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). The question in each of these cases is whether a defendant's will was overborne at the time she confessed. *Reck v. Pate*, 367 U.S. 433, 440 (1961). In determining whether a defendant's will was overborne, the Court looks at the totality of the circumstances surrounding the confession. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Factors considered in assessing the totality of the circumstances include the age, education, and intelligence of the defendant; whether the defendant has been informed of his *Miranda* rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep. *Id.*

Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to hold that McCalvin's confession was voluntary. As the court of appeals noted, (1) McCalvin signed a *Miranda* waiver; (2) McCalvin was of sufficient maturity to understand her rights because she was in her mid-twenties, a high school graduate, not ill or injured, and not under the influence of alcohol or drugs; (3) McCalvin received several breaks during the interrogations; (4) the detectives offered McCalvin food and water; and (5) Helgert testified that McCalvin was unemotional during the interrogation. In addition, McCalvin (6) was permitted to call her mother, (7) never asked for an attorney, and (8) never said anything indicating that she wished for the interview to stop. Together, these circumstances support a finding that McCalvin's will was not overborne.

Although some of the circumstances surrounding McCalvin's confession were perhaps coercive, they do not warrant a conclusion that the Michigan Court of Appeals' decision was objectively unreasonable. The following factors could provide support for a finding of coercion: McCalvin had no experience with jail or interrogation; McCalvin was held for eight to nine hours (though only interrogated for four); the detectives repeated the same questions several times until McCalvin confessed; two different teams of detectives were used; and Helgert stated that McCalvin would not have contact with her children if convicted of first-degree murder. Yet, even under these circumstances, it was not objectively unreasonable for the Michigan Court of Appeals to hold that McCalvin's will was not overborne. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). Under the deference required by AEDPA, and given the factors supporting a finding that McCalvin's confession was voluntary, the decision of the Michigan Court of Appeals was a reasonable application of federal law.

The district court largely grounded its decision on the similarity between this case and *Lynumn v. Illinois*, 372 U.S. 528 (1963), but *Lynumn* is distinguishable. In *Lynumn*, the defendant, who had never been in trouble with the law, was interrogated in her apartment while surrounded by three police officers and a police informant. *Id.* at 529-30. The officers told her that "state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate.'" *Id.* at 534. If she did cooperate, the officers promised that the prosecutor would go light on her. *Id.* at 532-34. The Supreme Court held that these circumstances made the defendant's confession involuntary. *Id.* at 534.

The circumstances surrounding the confession in *Lynumn*, however, differ from those surrounding McCalvin's confession in a number of ways. First, the defendant in *Lynumn* was interrogated while surrounded by three police officers and "a twice convicted felon who had purportedly 'set her up.'" *Id.* at 534. Here, McCalvin was never interrogated by more than two

officers.  Second, because *Lynumn* preceded the Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), the police never read the defendant her constitutional rights.  In this case, McCalvin signed a *Miranda* waiver and never asked to see her attorney or for the interrogation to stop.  A confession is much more likely to be voluntary when it is given after a person knowingly and voluntarily waives his *Miranda* rights.  As the Supreme Court stated in *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984), "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare."

Most importantly, the officers' statements in *Lynumn* are different from Helgert's statement that McCalvin would not have contact with her family, including her children.  The officers in *Lynumn* not only threatened that the defendant would lose contact with her children but also that the aid to the her children would be cut off.  372 U.S. at 534.  Such a statement is especially sinister because it implicates the children's livelihood.  In addition, the police in *Lynumn* explicitly promised leniency if the defendant confessed.  *Id.* at 532-34.  Helgert never admitted to promising McCalvin anything.  Helgert testified that he merely informed her of the consequences of a first-degree murder conviction.  We are not prepared to forbid police from conveying to suspects the seriousness of the crime for which they are being investigated.

This court noted a similar distinction in *Ledbetter v. Edwards*, 35 F.3d 1062 (6th Cir. 1994).  Although only Supreme Court case law is relevant under AEDPA in deciding what federal law is clearly established, lower federal court decisions may be used to the extent we have already reviewed and interpreted the relevant Supreme Court law.  *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).  In *Ledbetter*, we held that several misrepresentations by police officers, such as a staged victim identification and a fingerprint that the officers falsely claimed to have matched to the defendant, had not overborne the defendant's will.  35 F.3d at 1070.  In doing so, we distinguished the officers' conduct from that in *Lynumn*:

> In *Lynumn*, the concern was outright fear of adverse consequences, elimination of government benefits, which may be just as real as the physical fear of adverse consequences in outright torture. . . .  In our case, the only adverse consequences being presented to the defendant were the results of ultimately being convicted of the crime.  A defendant who is completely innocent might well confess in the circumstances of *Spano* or *Lynumn*, for fear of the extraneous adverse consequences.  By contrast, an innocent defendant in the circumstances in our case would have little incentive to render a false confession.

*Id.*  Similarly, McCalvin was not made to fear more than the result of being convicted of first-degree murder, which included not seeing her children.  It was therefore objectively reasonable for the Michigan Court of Appeals to distinguish *Lynumn* and find that this fear did not overcome McCalvin's will.[6]

---

[6]The district court also relied on the Ninth Circuit's decision in *United States v. Tingle*, 658 F.2d 1332 (9th Cir. 1981), but *Tingle* is distinguishable as well.  In *Tingle*, an FBI agent told the defendant that she would not see her child "for a while" if she went to prison.  *Id.* at 1336.  However, unlike this case, the agent promised the defendant that her cooperation would be communicated to the prosecutor, but if the defendant refused to cooperate the agent threatened to tell the prosecutor that she was "stubborn or hard-headed."  *Id.*  Finally, the defendant sobbed and was noticeably shaking for at least ten minutes before confessing.  *Id.* at 1334.  In this case, Helgert testified that McCalvin appeared unemotional.

Moreover, even if *Tingle* had been decided by this court instead of another circuit, its holding would be formally less relevant than our holding in *Ledbetter*.  Our holding in *Ledbetter* that certain actions were constitutional logically implies that such actions were at least reasonable applications of Supreme Court precedent.  In the other direction, however, a holding like *Tingle* that certain actions were *not* constitutional does not logically imply that a state court could not reasonably conclude that they were.

Because it was a reasonable application of federal law for the Michigan Court of Appeals to hold that McCalvin's confession was voluntary, it was also a reasonable application for it to hold that her trial counsel had not rendered ineffective assistance of counsel. To prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, a defendant must show a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. McCalvin cannot show that her motion to suppress would have succeeded had it been timely filed, and thus she cannot satisfy the prejudice requirement of her ineffective-assistance-of-counsel claim.

## IV.

This case is difficult, and our decision should not be read as approving the interrogation techniques used. Under the deference to state-court legal determinations required by AEDPA, however, we cannot say that the Michigan Court of Appeals unreasonably applied federal law as reflected in Supreme Court precedents. For the foregoing reasons, we reverse the judgment of the district court.

---

**DISSENT**

---

R. GUY COLE, JR., Circuit Judge, dissenting.

I disagree with the majority's resolution of this appeal, and I would affirm the district court's grant of the writ of habeas corpus.

## I. Coercion claim

The district court granted the writ based upon its conclusions that McCalvin's confession was coerced and that the untimeliness of McCalvin's suppression motion was excused by the ineffective assistance of McCalvin's counsel. The majority opinion addresses only the question of whether McCalvin's confession was coerced, and in answering in the negative rejects the coercion claim both as an independent ground for habeas relief and as a basis to satisfy the prejudice prong of McCalvin's ineffective assistance of counsel claim. Yet the government's brief presents only the following issue for our review: "Whether the district court erred in finding that the Michigan Court of Appeals' application of federal law was unreasonable and contrary to established Sixth Amendment law under 28 U.S.C. § 2254(d) where defense counsel's tactical decision to delay a motion to suppress Petitioner's confession was part of a reasoned trial strategy." Resp.-Appellant's Br. at 2. The government cites the two-part *Strickland* test for determining ineffective assistance of counsel – namely, deficiency in counsel's performance and resulting prejudice – but devotes its brief to arguing that counsel's performance was not deficient. Resp.-Appellant's Br. at 13-19. The entirety of the government's argument pertaining to the prejudice prong reads as follows:

> Petitioner is also unable to establish prejudice given the fact that the statements made to the detective were properly admissible. Petitioner cannot demonstrate that, but for counsel's alleged error in not raising the motion to suppress earlier in the proceedings, the outcome of her trial would have been different. This is especially true given the overwhelming evidence of Petitioner's guilt even absent her statements to the police.

Resp.-Appellant's Br. at 19. Even in this short paragraph, the only portion that can be characterized accurately as an argument that McCalvin's confession was not coerced is the bare assertion that "the statements made to the detective were properly admissible."

It is well established that issues not raised by an appellant in its opening brief, or issues "adverted to in a perfunctory manner [without] some effort at developed argumentation," are deemed waived. *United States v. Johnson*, --- F.3d ---, 2006 WL 623595, at *13 (6th Cir. 2006). Some of our decisions go so far as to suggest that waived arguments are "not reviewable" by this court; *e.g. Dixon v. Ashcroft*, 392 F.3d. 212, 217 (6th Cir. 2004); *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 284 (6th Cir. 1991); while elsewhere we suggest that this court has the option of considering or ignoring the waived arguments as we see fit; *e.g., Priddy v. Edelman,* 883 F.2d 438, 446 (6th Cir. 1989). Even assuming we have complete discretion to entertain or to ignore the coerced confession argument, I do not believe addressing the issue is appropriate here.

At oral argument this panel sought an explanation from the government as to why the coerced confession issue, to which a substantial portion of the government's oral argument was devoted, was absent from the government's brief. The government responded that it focused on the district court's determination of deficient performance because it believed the court's analysis of this issue to be more obviously flawed, but stated that it did not intend to waive the argument that

McCalvin's confession was not coerced. I do not believe such an explanation can excuse the government's failure to brief the issue. The government may not depend upon this court to assume that it is advancing every available argument; the petitioner certainly enjoys no such benefit. In cases where a district court has granted relief to a habeas petitioner, it is not this court's place, as a neutral adjudicatory body, to search the record for grounds upon which to reverse a grant of the writ.

Even if the issue of the voluntariness of McCalvin's confession had been properly preserved for appeal, I would affirm the district court's determination of the issue. McCalvin was taken into custody around 1:30 a.m. and her interrogation began some time between 3:30 and 5:00 a.m. JA 857-58, 861. During several hours of interrogation conducted by Detectives Palmer and Shadwell, McCalvin consistently maintained, both orally and in a written statement of her own drafting, that she accidentally pulled her car forward while thinking it was in reverse. Detective Helgert took over the interrogation at approximately 7:30 or 8:00 a.m. and proceeded to interrogate McCalvin for another hour and a half. JA 570-71. Detective Helgert testified that he told McCalvin that "it was very important . . . to explain why she did what she did," because if they believed she intended to kill the victim she would be charged with murder. JA 578. He suggested she provide a statement that she intended only to scare or hurt the victim. JA 577. Detective Helgert told McCalvin that if she were convicted of first degree murder she would go to jail for life and have "no contact" with her family, including her children. JA 650. Helgert testified that he posed a question to McCalvin along the lines of, "Did you intend to kill her, or were you just intending to scare her, or just to hurt her? Those various choices." He testified that "her answer was the least of several, 'I just intended to scare her.'" JA 641. Detective Helgert eventually wrote out a list of questions, to which McCalvin provided very brief written responses. In response to the question, "Did you intend to kill anyone with your BMW last night?", McCalvin wrote, "No." In response to the immediately following question, "What was the reason for accelerating your BMW so fast up Linell's driveway?", McCalvin wrote, "To scare." McCalvin had no opportunity to sleep during the course of her time in police custody and her interrogation (from approximately 1:30 a.m. to 9:00 a.m.). JA 513. She testified that during the interrogation she was "in shock" and "numb." JA 861. Given the totality of the circumstances, including the lateness of the hour and McCalvin's lack of sleep, the length of the interrogation and repetitive nature of the questioning, the explicit threat of the loss of contact with her children, and the implicit suggestion that if she chose the "least" of three choices regarding intent then she would escape these consequences, the facts support a conclusion that McCalvin's will was overborne. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (listing deprivation of sleep, length of interrogation, and repetitive nature of questioning among factors to consider in evaluating coerciveness); *Lynumn v. Illinois*, 372 U.S. 528, 532-34 (1963) (considering threats involving defendant's children in finding coercion).

At the very least, McCalvin is entitled to a remand for an evidentiary hearing as to whether her confession was coerced. The record contains several discrepancies between McCalvin's and Detective Helgert's recollections of the events, including statements that would go to the heart of her coercion claim. For instance, McCalvin testified, "[Helgert] just kept telling me that he was trying to help me, and I had to change my story . . . because [the victim] was dead . . . And they were going to charge me with First Degree Murder . . . And he told me that I wouldn't see my family or my kids, and that the People was going to contact my kids the next day." JA 865-66. She stated, "I was scared, I was numb, I didn't know what to do, and I asked him . . . what did he want me to do?" She further stated, "He told me that — you know, if I change my statement and say I meant to scare her then I could go home . . . And the Prosecutor probably would just throw it out and wouldn't charge me with anything." JA 868. The majority opinion emphasizes that "Helgert never admitted to promising McCalvin anything." Majority Opinion at 7. But neither the Michigan Court of Appeals's opinion nor the district court's opinion contains findings of fact crediting either witness's testimony above the other's. I believe that McCalvin's assertions, if true, describe a situation that is not reasonably distinguishable from the promises of leniency found to be coercive

in *Lynumn*, 372 U.S. at 532-34 (1963).  Upon the record available to this court, I believe we cannot conclude that the district court erred in granting McCalvin habeas relief.

## II.  Procedural default and ineffective assistance of counsel

        Although the majority opinion does not reach the issue, I also believe that the district court correctly concluded that McCalvin's coercion argument was not procedurally barred under AEDPA. A petitioner may overcome a state procedural bar to habeas review by demonstrating both an external cause for the procedural default, e.g., constitutionally ineffective assistance of counsel, and actual prejudice.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Although a failure to file a suppression motion does not constitute per se ineffective assistance of counsel, the decision must reflect a sound trial strategy and not counsel's mistaken understanding of the law.  *Kimmelman v. Morrison,* 477 U.S. 365, 384-85 (1986).

        The Michigan Court of Appeals's conclusion that McCalvin's counsel was not ineffective is impossible to square with its conclusion that McCalvin's suppression motion was untimely and procedurally barred under state law.  Counsel's postponement of his suppression motion until the motion was procedurally barred by state law cannot reflect a sound trial strategy.  The attorney's professed "strategy" of eliciting more truthful testimony from the officer under cross-examination regarding the voluntariness of the confession, *see* JA 113-15, is useless if the confession cannot be excluded after the jury has heard the officer's testimony.  It may be argued that the trial judge had the discretion under Michigan law to grant the defense counsel's motion at the end of the witness's testimony, and that defense counsel took a reasonably calculated risk that the motion would be granted given the circumstances.  If this were so, then Michigan law did not supply an adequate and independent procedural ground for barring habeas review of McCalvin's motion, *see Deitz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004) (holding rule giving discretion to court to grant delayed appeals without specifying criteria for exercising discretion is not adequate state ground to deny habeas review), and a finding of ineffective assistance is unnecessary to reach the merits of McCalvin's coerced confession claim.

## III.  Conclusion

        Given the obvious deficiency of McCalvin's counsel and the government's waiver of the issue of whether McCalvin's confession was coerced, I would affirm the district court's grant of the writ.  Even if this court were to revisit the merits of McCalvin's coercion claim despite the government's waiver of the issue, I would vacate and remand for a full and fair evidentiary hearing on the issue.  I therefore respectfully dissent from the majority's decision to reverse the judgment of the district court.