**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0145n.06

**No. 07-2166**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 07, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARIO EVANS, | ) | |
| | ) | |
| Petitioner - Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| RAYMOND BOOKER, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent - Appellee. | ) | OPINION |

Before: SILER, McKEAGUE, and STRANCH, Circuit Judges.

JANE B. STRANCH, Circuit Judge. Petitioner-Appellant Mario Evans appeals the district

court's denial of his petition for habeas corpus, arguing that his trial counsel rendered ineffective

assistance by failing to object to the admission of an inculpatory statement made after Evans was in

custody for approximately ninety-three hours. Because this case lacks any critical distinctions from

one previously decided by this Court regarding a statement Evans made eight hours earlier

concerning a different crime, we **AFFIRM** the district court's denial of Evans's habeas petition.

**I. BACKGROUND**

In the early morning of March 1, 2001, Petitioner-Appellant Mario Evans was taken into

custody for questioning regarding the murder of Jackie Williams several months earlier. He was

advised of his rights by Detroit Police Sergeant Felix Kirk, though Evans was not actually questioned

at that time as Kirk was near the end of his shift. Over the next few days, Evans remained in custody

while police questioned him about an unrelated murder, resulting in an inculpatory statement which

itself formed the basis of an appeal already considered by this Court. The facts surrounding that case

were summarized as follows:

> Early on the morning of March 1, 2001, Detroit police arrested Evans for his suspected involvement in a recent homicide. Over the next three and a half days, Evans was held incommunicado at Detroit police headquarters without any probable cause determination. During that time, police interrogated Evans on four separate occasions. Police informed Evans of his Constitutional rights prior to each interrogation session, and Evans signed and initialed multiple "Constitutional Rights Certificate[s] of Notification." Substantial periods of time passed between each interrogation session, and each session was apparently relatively brief. At the fourth interrogation session, more than 85 hours after his arrest, Evans confessed to murdering Kirk DeBerry on Lappin Street in Detroit.

*Evans v. Booker*, 379 F. App'x 518, 519 (6th Cir. 2010) (citations to the record omitted).

At around 10:45 a.m. on March 4, Evans was placed in a live suspect line-up for the Williams

murder, in which he was positively identified as the shooter by a witness. Evans was asked about

both murders by Investigator Isaiah Smith four hours later. The record contains a signed transcript

of Evans's confession to the DeBerry murder during that interrogation but no indication of what he

was asked or said about the Williams murder. At 11:30 p.m. that day—approximately ninety-three

hours after Evans was initially detained and eight hours after the DeBerry confession—Evans was

asked about the Williams murder by Sergeant Kirk. Before the questioning, Kirk again advised

Evans of his rights and observed him to be "awake and alert." After a request to "tell me about a

shooting on Seven Mile and Hayes from last year," Evans gave a lengthy statement asserting that he

helped a man named Fred Bishop obtain a shotgun to shoot a man with whom Evans "had some

2

words with a week before." Evans was later convicted by a jury of first-degree premeditated murder based almost entirely on this statement and an eyewitness identification.[1]

Evans filed a timely habeas petition alleging, among other things, that his trial attorney was ineffective in failing to move to suppress the lineup identification testimony and Evans's custodial statement. After the district court rejected the petition, this Court granted a Certificate of Appealability on those issues. Evans, who is represented by counsel on appeal, argues only ineffective assistance regarding the custodial statement.

## II. DISCUSSION

"This Court reviews a district court's dismissal of a petition brought pursuant to 28 U.S.C. § 2254 *de novo*." *Thompson v. Bell*, 580 F.3d 423, 433 (6th Cir. 2009). Under § 2254(d), a federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In reviewing a habeas claim, the decision this Court considers is that of "the last state court to issue a reasoned opinion on the issue." *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005). The state court's factual findings must be treated as presumptively correct. 28 U.S.C. § 2254(e)(1). A

---

[1]Evans obviously could not have been both the shooter (as the eyewitness testified) and an accomplice (as Evans told police). However, he would be equally responsible for the murder under Michigan's aiding and abetting statute. Mich. Comp. Laws § 767.39.

petitioner may overcome this presumption only with clear and convincing evidence. *Id.* Although

the voluntariness of a confession is a legal question that falls outside the scope of this presumption,

*Miller v. Fenton*, 474 U.S. 104, 115 (1985), "subsidiary factual questions," including a state court's

credibility determinations at a judicial hearing, are entitled to the § 2254(e)(1) presumption. *See id.*

at 112; *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007).

Evans's claim of ineffective assistance of counsel requires him to show that his attorney's

performance was constitutionally deficient and he was prejudiced as a result. *Foust v. Houk*, 655

F.3d 524, 533 (6th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Our

review of a state court's ineffective assistance determination is "doubly deferential" because of the

combined effect of *Strickland* and § 2254(d). *Id.* (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388,

1403 (2011)). In order to succeed on the prejudice prong, Evans "must show a reasonable

probability that . . . [his] motion to suppress would have succeeded had it been timely filed."

*McCalvin v. Yukins*, 444 F.3d 713, 722 (6th Cir. 2006).

Under current Supreme Court jurisprudence, a confession is inadmissible if obtained through

means incompatible with due process. *Miller*, 474 U.S. at 116. The ultimate test of whether a

confession accords with due process is "the test of voluntariness." *Culombe v. Connecticut*, 367 U.S.

568, 602 (1961). The question in each case is "whether a defendant's will was overborne at the time

he confessed." *Reck v. Pate*, 367 U.S. 433, 440 (1961). To determine whether a defendant's will

was overborne, a court must examine "the totality of all the surrounding circumstances—both the

characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412

U.S. 218, 226 (1973). Relevant factors include: (1) the duration and conditions of detention; (2) the

repeated and prolonged nature of the questioning; (3) the use of physical punishment; (4) the

defendant's physical and mental state; (5) the youth of the defendant; (6) the defendant's lack of

education or low intelligence; and (7) the lack of any advice to the defendant on his constitutional

rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993); *Bustamonte*, 412 U.S. at 226.

The Sixth Circuit previously denied habeas relief in Evans's other case stemming from his

statement regarding the DeBerry murder that was made during the same custodial detention but

approximately eight hours earlier than the statement at issue here. In the DeBerry murder case, we

held that the Michigan Court of Appeals correctly identified and applied the principals of *Withrow*

"by examining all of the circumstances surrounding Evans's confession to determine whether his

will was overborne." *Evans*, 379 F. App'x at 521 (citing *People v. Evans*, No. 240357, 2004 WL

547232, *2 (Mich. Ct. App. Mar.18, 2004)).[2] Specifically, this Court stated:

> The [Michigan] court observed that, although Evans was held for over 85 hours
> without arraignment, the police repeatedly advised Evans of his rights, did not
> subject him to continuous or prolonged interrogation, and did not engage in abusive
> or intimidating behavior. Further, the court highlighted police testimony that Evans
> was alert and did not complain of fatigue. Finally, the court noted that Evans was
> twenty-one years old, could read and write, and had prior contact with the police,
> including arrests. Based on all of these factors, the Michigan Court of Appeals found
> that Evans's will was not overborne.

*Id.* (internal citations removed); *see also Davis v. Jones*, 306 F. App'x 232, 237-38 (6th Cir. 2009)

(denying habeas relief when counsel failed to object to voluntariness of statement given after three

---

[2]Evans had the same attorney in both cases, Ira Harris. Harris *did* attempt to have the inculpatory statement excluded from his other trial in a hearing that was held a few months before the trial for the Williams murder. Transcript of Hearing, 5/4/01, *Evans v. Booker*, No. 2:05-cv-74130-NGE-VMM (E.D. Mich. May 16, 2006), ECF No. 13. The motion was denied.

days in custody and during a ninety-six hour pre-arraignment delay). A comparison between Evans's two Michigan Court of Appeals decisions—which were issued on the same day—reveals that the state court's analysis in this case was actually *more* thorough than the one previously examined by this Court. *See People v. Evans*, No. 238184, 2004 WL 547229, *3 (Mich. Ct. App. Mar.18, 2004). In particular, the state court in this case observed that Evans "never expressed any hesitation about talking about the shooting and did not request to speak with a lawyer" and that "there is no evidence that he was subjected to continuous interrogation or to intimidating police conduct." *Id.*

Evans acknowledges that "certain aspects of [his] pre-arraignment detention were at issue" in the earlier Sixth Circuit case and correctly observes that the decision "does not dictate any conclusion in this case." However, this Court may certainly consider the earlier case to the extent that there are similarities between the cases, just as it would with any other prior decision. *See Hall v. City of Clarksville*, 276 F. App'x 457, 463-64 (6th Cir. 2008) (Title VII case comparing prior Sixth Circuit decision with different plaintiff but same employer and "several overlapping facts"). Evans suggests that a comparison would be inappropriate because the district court found that "the circumstances were sufficiently distinct" when it denied consolidation of Evans's habeas petitions. However, the order reveals that the court denied consolidation solely because the "petitions challenge convictions arising from unrelated occurrences." Moreover, the petitions challenged issues beyond the voluntariness of either statement, such as a lineup identification which related only to this case.

There are no differences between Evans's two cases for most of the factors in the voluntariness test, including the use of physical punishment, Evans's mental state, age, and

education, and advice on his constitutional rights. All of these factors support a finding of voluntariness. Where differences exist, the relevant factors must be considered as part of the totality of the circumstances of this case. Weighing in Evans's favor is the fact that the inculpatory statement here occurred approximately eight hours after the statement considered in the other case. However, there is nothing in the record to suggest that this additional time—or any events that may have occurred therein—would have had any significant impact on the voluntariness of Evans's statement.

Weighing against Evans is the fact that the nature of the questioning regarding the Williams murder was less "repeated and prolonged." Although Evans faced four interrogations and gave multiple statements about the DeBerry murder, it appears that he was only questioned twice about the Williams murder and gave the inculpatory statement without hesitation after being questioned by Sergeant Kirk. *See McCalvin*, 444 F.3d at 720 (finding of coercion would be supported by fact that "the detectives repeated the same questions several times until McCalvin confessed"); *cf. Davie v. Mitchell*, 547 F.3d 297, 331 (6th Cir. 2008) (citing *Michigan v. Mosley*, 423 U.S. 96, 102-06 (1975)) (questioning about "entirely different crime" is a "new interrogation" for *Miranda* purposes). A comparison of the facts surrounding the inculpatory statements in both cases reveals no significant distinctions that could justify a different result here.

### III. CONCLUSION

We join the prior panel of this Court and the Michigan Court of Appeals in condemning Evans's "troubling" and "unreasonable" extended, incommunicado detention by the Detroit Police Department. *Evans*, 379 F. App'x at 522; *Evans*, 2004 WL 547232, at *2. However, a review of

7

the totality of the circumstances does not suggest that Evans's will was overborne at the time he made the inculpatory statements about the Williams murder. Evans cannot meet the prejudice prong of *Strickland* because a motion to suppress his inculpatory statements would not have succeeded had one been filed. *McCalvin*, 444 F.3d at 772. We **AFFIRM** the district court's denial of Evans's habeas petition.